Robert Loigman
Scott C. Shelley
Lindsay M. Weber
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

*Attorneys for the Foreign Representatives*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 15 |
| Kingate Global Fund, Ltd., | Case No. 19-12853 |
| Debtor in a Foreign Proceeding. | |

---

| | |
|---|---|
| In re: | Chapter 15 |
| Kingate Euro Fund, Ltd., | Case No. 19-12852 |
| Debtor in a Foreign Proceeding. | |

---

**VERIFIED PETITION OF FOREIGN REPRESENTATIVES PAUL PRETLOVE AND
TAMMY FU IN SUPPORT OF APPLICATION OF KINGATE GLOBAL FUND, LTD.
AND KINGATE EURO FUND, LTD. FOR RECOGNITION OF FOREIGN MAIN
PROCEEDINGS PURSUANT TO SECTION 1517 OF THE BANKRUPTCY CODE
<u>AND SEEKING RELATED RELIEF</u>**

Petitioners Paul Pretlove and Tammy Fu,[1] in their joint capacities as foreign

representatives (the "<u>Foreign Representatives</u>" or "<u>Petitioners</u>") of the liquidation of Kingate

---

[1]    Mr. Pretlove and Ms. Fu are managing directors of Kalo (BVI) Limited and Kalo
(Cayman) Limited respectively.  Prior to renaming the companies as Kalo in 2017, they were
previously known and operating as AlixPartners' BVI and Cayman offices and, before that, as
Zolfo Cooper's BVI and Cayman offices.

Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro", and

together with Kingate Global, the "Kingate Funds") pending in the Eastern Caribbean Supreme

Court in the High Court of Justice of the British Virgin Islands ("BVI"), Commercial Division

(the "BVI Court"), through their attorneys Quinn Emanuel Urquhart & Sullivan LLP, hereby file

this verified petition (together with the Forms of Voluntary Petition [Doc. No. 1], the

"Petitions") and seek entry of an order substantially in the form annexed hereto as Exhibit A (the

"Proposed Order"):  (1) recognizing the BVI insolvency proceedings of Kingate Global and

Kingate Euro[2] (the "BVI Proceedings") as a foreign main proceeding pursuant to sections 1515

and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy

Code"); and (2) confirming relief pursuant to Bankruptcy Code section 1520.[3]  Annexed hereto

are the following documents, submitted in support of the Petitions:

(i)      Exhibit B – BVI Court Order dated June 4, 2009 commencing BVI Proceedings
of Kingate Global;

(ii)     Exhibit C – BVI Court Order dated June 4, 2009 commencing BVI Proceedings
of Kingate Euro;

(iii)    Exhibit D – BVI Court order dated May 2, 2016 appointing Mr. Paul Pretlove as a
Joint Liquidator of the Kingate Funds;

(iv)     Exhibit E – BVI Court order dated March 9, 2018 appointing Ms. Tammy Fu as a
Joint Liquidator of the Kingate Funds;

---

[2]   Contemporaneously with the filing of the Petitions, the Foreign Representatives are
seeking to have the chapter 15 cases of Kingate Global and Kingate Euro jointly administered.

[3]   This Verified Petition refers to chapter 15 of the Bankruptcy Code (11 U.S.C. §§
1501–1532) as "Chapter 15" and to the proceeding resulting from this Petition as this "Chapter
15 Proceeding."

(v)     <u>Exhibit F</u> – Order dated September 4, 2009 issued by the Supreme Court of
Bermuda (the "<u>Bermuda Court</u>") (i) directing that Kingate Global be wound up in
insolvency proceedings in accordance with the procedures of the Bermuda
Companies Act 1981 (the "<u>Bermuda Proceedings</u>") , and (ii) appointing William
Tacon, Richard Fogerty, and John McKenna as joint provisional liquidators
(together, the "<u>JPLs</u>") in the Bermuda Proceedings of Kingate Global;

(vi)    <u>Exhibit G</u> – Order dated September 4, 2009 (together with Exhibit F, the
"<u>Bermuda Orders</u>") issued by the Bermuda Court (i) directing that Kingate Euro
be wound up in accordance with the procedures of the Bermuda Companies Act
1981, and (ii) appointing the JPLs in the Bermuda Proceedings of Kingate Euro;

(vii)   <u>Exhibit H</u> – Order dated December 9, 2010 issued by the English High Court of
Justice (the "<u>English Court</u>") pursuant to article 15 of the UNCITRAL Model
Law on Cross-Border Insolvency Regulations 2006, granting recognition of the
BVI Proceedings of Kingate Global as foreign main proceedings as of December
2, 2010;

(viii)  <u>Exhibit I</u> – Order dated December 9, 2010 issued by the English Court pursuant to
article 15 of the UNCITRAL Model Law on Cross-Border Insolvency
Regulations 2006, granting recognition of the BVI Proceedings of Kingate Euro
as foreign main proceedings as of December 2, 2010; and

(ix)    <u>Exhibit J</u> – Statement of Foreign Representatives Pursuant to 11 U.S.C. § 1515(c).

(x)     <u>Exhibit K</u> – Corporate Ownership Statement Pursuant to Bankruptcy Rule
1007(a)(4)(A); and

(xi)    <u>Exhibit L</u> – List Pursuant to Bankruptcy Rule 1007(a)(4)(B).

In further support of the Petitions, the Foreign Representatives file simultaneously herewith and incorporate herein by reference (1) the Declaration of Paul Pretlove in support of Chapter 15 recognition (the "Pretlove Decl."), and (2) the Declaration of Eleanor Morgan, an expert on BVI restructuring and insolvency law (the "Morgan Decl."), and respectfully state as follows:

## INTRODUCTION

1.      The Foreign Representatives have commenced this case pursuant to Bankruptcy Code sections 1504, 1509 and 1517, seeking recognition of the BVI Proceedings as a foreign main proceeding and the automatic relief provided by Bankruptcy Code section 1520.

2.      The Foreign Representatives seek chapter 15 relief at this time to protect their recent settlement (the "Madoff Settlement") with Irving Picard, the trustee (the "Madoff Trustee") for the bankruptcy estate of Bernard L. Madoff Investment Securities LLC ("BLMIS") and to ensure an orderly liquidation of the Kingate Funds' assets.  Prior to the Madoff Settlement, the Kingate Funds did not have significant assets in the United States.  As a result of the settlement, however, the Kingate Funds will have allowed claims against BLMIS in the amount of $1.66 billion, which should result in an initial catch-up distribution of approximately $262 million from BLMIS.  In order to protect these funds so that they may be distributed to creditors of the Kingate Funds through a distribution process overseen by the BVI Court, the Foreign Representatives have determined to seek chapter 15 protection.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 28 U.S.C. §§ 1334(a) and (b), and 11 U.S.C. § 1501.  Venue with respect to these Petitions is proper pursuant to 28 U.S.C. § 1410(1) because the Kingate Funds' principal assets in the United States – its claims under the Securities Investor Protection Act in the liquidation proceedings of Bernard

L. Madoff Investment Securities LLC (the "SIPA Proceedings") – are located in this district.  This

is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P).

## BACKGROUND

   **A.    Overview of the Kingate Funds' Structure**

4.    The Kingate Funds were open-ended investment funds organized under the laws

of the BVI, which held managed accounts with BLMIS, the company established and operated by

Bernard L. Madoff.  Pretlove Decl. ¶ 13.

5.    Kingate Global was established in 1994, with its registered office in Bison Court,

P.O. Box 3460, Road Town, Tortola, BVI.  Kingate Global filed an amended and restated

memorandum of Association and Articles of Association on April 27, 2009, again listing its

registered office as Bison Court, P.O. Box 3460, Road Town, Tortola, BVI.  *Id*. ¶ 14.

6.    Kingate Euro was created in January 1996 as a sub-fund of Kingate Global to

handle investments made in Deutsche Marks.  In April 2000, Kingate Euro became a separate

legal entity to handle investments denominated in Euros, with its registered office in Bison Court,

P.O. Box 3460, Road Town, Tortola, BVI.  Kingate Euro filed an amended and restated

memorandum of Association and Articles of Association on April 27, 2009, again listing its

registered office as Bison Court, P.O. Box 3460, Road Town, Tortola, BVI.  *Id*. ¶ 15.

7.    Until mid-December 2008 when Madoff was arrested, the Kingate Funds raised

money through subscriptions for their shares, which they invested by paying their surplus cash

into an account managed by BLMIS on their behalf.  Each of Kingate Global and Kingate Euro

supposedly reaped profits on the investments purportedly made by BLMIS, which their

shareholders could realize by redeeming their shares at a price proportionate to the net asset

values of the Kingate Funds from time to time.  *Id*. ¶ 16.

8.      Originally, Kingate Global was managed under "Co-Manager" agreements by

Tremont (Bermuda) Limited ("Tremont") and Kingate Management Limited ("KML") in

Bermuda.  In 2006, Kingate Global terminated the co-manager agreement with Tremont, leaving

KML as its sole manager.  In May 2000, Kingate Euro entered into a management agreement with

KML.  *Id*. ¶ 18.

### B.      The Kingate Funds' Collapse

9.      As of December 2008, almost all of the assets of the Kingate Funds were invested

with BLMIS.  As a result, the arrest of Madoff and the subsequent bankruptcy of BLMIS forced

the Kingate Funds into liquidation in the BVI.  Pretlove Decl., ¶ 18.

10.     The Kingate Funds were placed into provisional liquidation on May 8, 2009 and

were ultimately wound up by orders of the BVI Court dated June 4, 2009 (the "Winding Up

Orders").  By the Winding Up Orders, the BVI Court appointed William R. Tacon and Richard F.

Fogerty as joint liquidators of the Kingate Funds (together, with their successors, the "Joint

Liquidators").  *Id*. ¶ 7.  Copies of the Winding Up Orders are attached hereto as Exhibits B and C.

11.     Since that time, the liquidation of the Kingate Funds has been administered in the

BVI by the Joint Liquidators under the supervision of the BVI Court.  Morgan Decl. ¶ 23.

12.     Shortly after their appointment, the Joint Liquidators sought and obtained

authorization from the BVI Court to commence additional ancillary liquidation proceedings for

the Kingate Funds in Bermuda, to aid and assist the principal liquidation proceeding in BVI (the

"Bermuda Proceedings").  The Bermuda Orders, dated September 4, 2009 and issued by the

Bermuda Court (i) ordered that the Kingate Funds be wound up in accordance with the procedures

of the Bermuda Companies Act 1981, and (ii) appointed Mr. Tacon, Mr. Fogerty, and John

McKenna as joint provisional liquidators in the Bermuda Proceedings.  Copies of the Bermuda

Orders are attached hereto as Exhibits F and G.  By orders dated October 5, 2009, Mr. Tacon, Mr.

Fogerty, and John McKenna were appointed as joint liquidators in the Bermuda Proceedings. Pretlove Decl. ¶ 8.

13.     Notwithstanding the opening of the ancillary Bermuda Proceedings, the liquidation of the Kingate Funds has been centered in BVI since at least June 2009. *Id.* ¶ 9.

14.     On October 4, 2010, the Joint Liquidators sought recognition of the BVI Proceedings as foreign main proceedings from the English Court pursuant to article 15 of the UNCITRAL Model Law on Cross-Border Insolvency Regulations 2006. The English Court entered orders on December 9, 2010 granting recognition of the BVI Proceedings as foreign main proceedings as of December 2, 2010. *Id.* ¶ 10; Morgan Decl., ¶ 14. Copies of the English Court orders are attached hereto as Exhibits H and I.

### C.     The Clawback Proceedings and Madoff Settlement

15.     On April 17, 2009, the Madoff Trustee filed a complaint commencing proceedings against the Kingate Funds under various sections of the Bankruptcy Code and the New York debtor and creditor law, asserting claims to avoid and claw back $398,797,047 from Kingate Global and $527,554,858 from Kingate Euro (the "Clawback Proceeding"). Pretlove Decl. ¶ 19; *see also* Doc. No. 100 in *Picard v. Ceretti et al.*, Case No. 09-01161 (SMB) (SDNY Bankr.).

16.     The Madoff Trustee also sought to equitably subordinate the claims (the "Customer Claims") filed by the Kingate Funds in the liquidation of the BLMIS estate for their approximately $800 million net loss (i.e., the amount they had invested with BLMIS and never received back). *Id.* ¶ 20.

17.     After years of litigation, the Joint Liquidators achieved settlement of the Clawback Proceeding in June 2019. The settlement followed a mediation in New York which

took place over several days and which was followed by several weeks of extensive negotiations. Pretlove Decl. ¶ 21.

18.     The terms of the Madoff Settlement are set out in a settlement agreement dated June 26, 2019. *Id.* ¶ 22; *see also* Exhibit A to Doc. No. 413 in *Picard v. Ceretti et al.*, Case No. 09-01161 (SMB) (SDNY Bankr.).

19.     The Settlement Agreement is subject to a number of conditions precedent before it becomes final and binding. One condition is that the Madoff Trustee obtains approval of the Settlement Agreement from this Court, which is presiding over the SIPA Proceeding. *See* Pretlove Decl., ¶ 23. This Court entered an order approving the Settlement Agreement on August 6, 2019. *Id.*; *see also* Doc. No. 417 in *Picard v. Ceretti et al.*, Case No. 09-01161 (SMB) (SDNY Bankr.).

20.     The Settlement is also conditional upon the Joint Liquidators obtaining sanction from both the BVI and Bermuda Courts to enter into the Settlement Agreement. Pretlove Decl. ¶ 24; *see also* Exhibit A to Doc. No. 413 in *Picard v. Ceretti et al.*, Case No. 09-01161 (SMB) (SDNY Bankr.) at 9. The Joint Liquidators have filed applications to both the BVI and Bermuda Courts for sanction, and are now awaiting hearings. Pretlove Decl. ¶ 24.

21.     Under the Settlement Agreement, Kingate Global will receive an allowed claim in the BLMIS proceeding in the amounts of $950,401,414.27 and Kingate Euro will receive an allowed claim in the BLMIS proceeding in the amount of $709,346,680.25. After providing for the offset of the "Catch-up Payment" due to the Madoff Trustee on the avoidance claims, Kingate Global will receive a remainder payment of $262,315,130.70 from the BLMIS estate on the Closing Date (as defined in the Settlement Agreement). Both Kingate Global and Kingate Euro will be entitled to participate in collecting future distributions from the Madoff Trustee.

Future distribution amounts are uncertain, of course, but could, based on current market projections, be in the range of an additional $79,500,000 to Kingate Global and $59,350,000 to Kingate Euro.  *Id*. ¶ 25.

> **D.    Litigation With Deutsche Bank Securities**

22.    News of the Madoff Settlement has prompted certain purported creditors of the Kingate Funds to assert entitlement to funds received by the Kingate Funds on account of their soon-to-be allowed Customer Claims.  In particular, Deutsche Bank ("DB"), with whom the Joint Liquidators engaged in negotiations to sell their claims back in July 2011, has indicated that it intends to seek to enforce an abandoned short form trade confirmation which the Joint Liquidators signed on August 24, 2011 (the "Trade Confirmation").  *Id*. ¶ 26.

23.    As set forth in the Trade Confirmation, the sale transaction was subject to the execution of a Purchase and Sale Agreement ("PSA").  However, no PSA was ever signed because DB refused to discuss the final drafting points required to complete the PSA and the deal foundered in late 2011.  *Id*. ¶ 27.

24.    In December 2011, the Joint Liquidators, with the sanction of the BVI Court, commenced an action in the Southern District of New York to try to enforce DB's commitment to purchase the Kingate Funds' Customer Claims.  *Id*. ¶ 28; *see also Kingate Global et al. v. Deutsche Bank Securities Inc.*, Case No. 11-cv-09364-DAB (SDNY 2011).

25.    In answering the complaint, DB asserted that (among other things) the Trade Confirmation was a preliminary agreement without all material terms, and that DB had satisfied the obligation of good faith by negotiating for several months during 2011.  DB sought a declaration that it had no continuing obligations under the Trade Confirmation, as the underlying deal between the Joint Liquidators and the Madoff Trustee was not acceptable to DB.  Pretlove Decl. ¶ 29.

9

26.     DB's Answer and Counterclaim concluded with the following affirmative

defenses (among others):

> • The Confirmation Letter, standing alone, is not a binding agreement obligating
> DBSI to purchase the claims referenced therein.
>
> • DBSI had met all of its obligations, if any, that existed under the Confirmation
> Letter.
>
> • There was no meeting of the minds as to the nature of the claim to be conveyed
> by the Funds.

*Id*. ¶ 30; *see also* Doc. No 10 in *Kingate Global et al. v. Deutsche Bank Securities Inc.*, Case No.

11-cv-09364-DAB (SDNY 2011).

27.     Further negotiations ensued, but proved unfruitful, and the lawsuit was dismissed,

without prejudice, by a stipulation of dismissal entered on January 2, 2014.  Pretlove Decl., ¶ 31;

*see also* Doc. No. 18 in *Kingate Global et al. v. Deutsche Bank Securities Inc.*, Case No. 11-cv-

09364-DAB (SDNY 2011).  The Joint Liquidators have had limited contact with DB during the

ensuing six years.  Pretlove Decl. ¶ 31.

28.     After learning of the Kingate Funds' mediation efforts, DB's attorneys sent a

letter to the Joint Liquidators in May 2019 asserting that the Trade Confirmation remained

binding on the Kingate Funds and that DB was "ready and willing to provide support to Kingate

in the mediation or otherwise in an effort to facilitate the resolution of the dispute between

BLMIS and Kingate, and in turn permit the transactions contemplated by the Trade Confirm to

be consummated."  The Joint Liquidators responded in a letter dated May 16, 2019, stating that

the Trade Confirmation was not binding and observing that, at that point, almost eight years had

elapsed without DB making any payment or finalizing the required documentation.  *Id*. ¶ 32.

E.      **The Debtors' Need for Recognition**

29.     Despite DB's repudiation of the earlier proposed transaction, and the passage of

many years' time, the Joint Liquidators understand that DB may now attempt to resurrect the

Trade Confirmation, based on the increase in value of the Kingate Funds' Customer Claims.  The

Joint Liquidators are concerned that DB may initiate litigation against the Kingate Funds in the

United States, in an effort to misappropriate value that should be distributed to stakeholders in the

Kingate Funds' liquidations.  Pretlove Decl. ¶ 33.

30.     In order to protect the interests of stakeholders of the Kingate Funds from

purported creditors like DB seeking entitlement to the Kingate Funds' now-significant U.S.

assets, the Joint Liquidators seek recognition of the BVI Proceedings and protection under

Chapter 15.  *Id*. ¶ 34.

## RELIEF REQUESTED

31.     The Joint Liquidators, in their capacities as Foreign Representatives, respectfully

request that this Court enter an order, substantially in the form attached hereto as Exhibit A,

pursuant to sections 105(a), 1507(a), 1509(b)(2)–(3), 1515, 1517, 1520 and 1521(a) of the

Bankruptcy Code:

      a. recognizing the BVI Proceedings as a foreign main proceeding (as defined in section 1502 of the Bankruptcy Code) and granting the Kingate Funds all of the relief afforded to such proceedings pursuant to section 1520 of the Bankruptcy Code; or alternatively, recognizing the BVI Proceedings as a foreign nonmain proceeding (as defined in section 1502 of the Bankruptcy Code) and granting the Kingate Funds all of the relief requested herein pursuant to section 1521 of the Bankruptcy Code;

      b. recognizing each of the Joint Liquidators as "Foreign Representatives" as defined in section 101(24) of the Bankruptcy Code in respect of the BVI Proceedings;

      c. entrusting the administration and realization of any and all of the Kingate Funds' assets within the territorial jurisdiction of the United States to the Foreign Representatives;

d.  providing that all injunctions and orders issued by the BVI Court identified in the Petitions, are recognized, granted comity, and entitled to full force and effect in accordance with their terms, and that such terms shall be binding and fully enforceable;

e.  to the extent not already provided in 11 U.S.C. § 1520, enjoining all creditors and other persons, including creditors and purported creditors of the Kingate Funds from (i) disposing or otherwise taking any action against any property of the Kingate Funds located within the territorial jurisdiction of the United States;  and (ii) taking or continuing any act to obtain possession of or exercise control over, such property;

f.  to the extent not already provided in 11 U.S.C. § 1520, enjoining the commencement of any suit, action or proceeding in the territorial jurisdiction of the United States to resolve any dispute arising out of the BVI Proceedings, the Madoff Settlement or any orders issued by the BVI Court identified in the Petitions, or the BVI law relating thereto; *provided* that such relief shall not apply to the Clawback Proceeding;

g.  otherwise giving full force and effect to the BVI Proceedings; and

h.  granting Joint Liquidators such other and further relief as this Court deems just and proper (together with the relief requested in subparagraphs (a) through (g), the "Relief Requested").

## BASIS FOR RELIEF

32.    The Relief Requested is based on the provisions of Chapter 15 of the Bankruptcy Code.  As directed by the statute, in interpreting Chapter 15, a court is to "consider its international origin, and the need to promote an application of [Chapter 15] that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508.

33.    Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if (a) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code; (b) the foreign representative applying for recognition is a person or body; and (c) the petition meets the requirements of section 1515 of the Bankruptcy Code.  *See In re Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008).

## I.    The BVI Proceedings Should be Recognized As A Foreign Main Proceeding

34.    The BVI Proceeding, the Foreign Representatives, and the Petitions satisfy all of the foregoing requirements of Bankruptcy Code section 1507(a).

### A.    The BVI Proceedings are a Foreign Main Proceeding

35.    The BVI Proceedings are a "foreign proceeding" as that term is defined in section 101(23) of the Bankruptcy Code.  Bankruptcy Code section 101(23) defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).

36.    Here, there is no dispute that the BVI Proceedings are insolvency proceedings brought under BVI law, which provides a statutory means for applicants thereunder to reorganize their financial affairs subject to the supervision of a court.  *See* Morgan Decl. ¶¶ 12, 18-19, 21-27. Specifically, the BVI Proceedings were initiated under Part VI, titled "Liquidation," of the Insolvency Act, 2003 of the British Virgin Islands (the "BVI Act").  *Id*. ¶ 12.  The enacting legislation for the BVI Act describes it as:

> An Act to reform the law relating to the insolvency of companies and foreign companies, limited partnerships, partnerships and individuals and to provide, in particular, for a mechanism for insolvent persons to enter into arrangements with their creditors, an administration procedure for companies, the receivership of companies and foreign companies, the liquidation of companies, foreign companies, limited partnerships and partnerships ….

*See id*., ¶ 24.

37.    The BVI Act provides various alternatives for distressed companies, including liquidation, creditor arrangements, receiverships and administrative receiverships, all of which are in the nature of collective proceedings.  *See id*. ¶¶ 25-26.  "A collective proceeding is one that

considers the rights and obligations of all creditors. This is in contrast, for example, to a

receivership remedy instigated at the request, and for the benefit, of a single creditor." *In re

Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009).

38.    Liquidation under the BVI Act is a collective judicial proceeding within the

meaning of Bankruptcy Code section 101(23). Liquidation proceedings operate to determine and

resolve the rights of all creditors and stakeholders, not just a single creditor. Morgan Decl. ¶ 26;

*see also* BVI Act (relevant sections attached to the Morgan Decl. as Exhibit 1), § 11(2) (defining

admissible claims as including (i) all pre-liquidation liabilities of the company, (ii) all post-

liquidation liabilities of the company, and (iii) any interest claimed in accordance with the BVI

Act or the Insolvency Rules); BVI Act § 207 (providing for the payment of classes of admitted

claims and expenses in accordance with statutory priorities, and if the amount available for such

claims is insufficient to pay claims in full, directing their ratable payment by class).

39.    The BVI Proceedings also satisfy the requirement that the assets of the Kingate

Funds be subject to the control or supervision of a foreign court. In performing their duties,

liquidators in BVI liquidation proceedings act as officers of the BVI Court. Morgan Decl. ¶¶ 22,

28. The BVI Act, and the orders of the BVI Court appointing the liquidators, set forth the powers

of the liquidators, and provide that certain powers, such as compromising claims, may be

exercised only with sanction of the BVI Court. *Id*. ¶¶ 18-19.

40.    Bankruptcy Courts in the United States have repeatedly recognized that collective

insolvency proceedings under the supervision of the courts of the Eastern Caribbean Supreme

Courts, including the BVI Court, are "foreign proceedings" within the meaning of Bankruptcy

Code section 101(23). *See, e.g.*, *In re Fairfield Sentry Ltd.*, 440 B.R. 60, 67 (Bankr. S.D.N.Y.

2009) (recognizing BVI liquidation of Madoff feeder fund as foreign main proceeding); *In re*

*Grand Prix Assocs. Inc.*, 2009 WL 1410519, *8 (Bankr. D. N.J. 2009) (recognizing creditor's arrangement under the control of a corporate entity for the purposes of adjusting debt, with supervision by the BVI Court pursuant to the BVI Business Companies Act); *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 889 (Bankr. S.D. Fla. 2010) (recognizing debtor's insolvency proceeding as a "foreign proceeding" where it was pending before the High Court of Justice for Saint Vincent and the Grenadines); *In re Condor Ins. Ltd.*, 2008 WL 2858943, *1 (Bankr. S.D. Miss. 2008) recognizing debtor's insolvency proceeding as a "foreign proceeding" where they are pending before the High Court of Justice in Nevis); *In re Tri-Continental Exch. Ltd.*, 349 B.R. 629, 632 (Bankr. E.D. Cal. 2006) (recognizing debtor's insolvency proceedings pending before the Eastern Caribbean Supreme Court, under the laws of St. Vincent and Grenadines).

41.    The Foreign Representatives accordingly submit that the BVI Proceedings are a "foreign proceeding" under Bankruptcy Code section 101(23).

### B.    The Petitioners are Foreign Representatives

42.    The Petitioners, as the duly-appointed joint liquidators of the Kingate Funds, are "foreign representatives" within the meaning of Bankruptcy Code section 101(24), which provides as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. §101(24).

43.    Pursuant to the Winding Up Orders, the Petitioners were appointed by the BVI Court and are duly authorized to act as liquidators of the Kingate Funds.  Morgan Decl. ¶ 12, 15. The powers of a liquidator under the BVI Act are extensive.  *Id.* ¶¶ 18-19.  Upon appointment, the liquidator obtains custody and control of the company's assets and has the power to compromise

15

claims, commence litigation and to dispose of property. *Id.* ¶ 22; *see also* BVI Act, §§ 175, 186. From the evidence submitted on behalf of the Petitioners, including the Winding Up Orders, the Petitioners are duly authorized to act as the foreign representatives of the Kingate Funds, as defined under section 101(24), in these chapter 15 cases. Morgan Dec1. ¶¶ 28-30. Bankruptcy courts have held that persons appointed as liquidators by the BVI Court are "foreign representatives" entitled to petition the U.S. bankruptcy court for an order recognizing a foreign proceeding. *See, e.g.*, *Grand Prix*, 2009 WL 1410519 at *5; *see also In re Fairfield Sentry Ltd.*, Case No. 10-13164, ECF No. 47-1 (Minute Order dated July 22, 2010, granting recognition and related relief).

44.     Additionally, each of the Petitioners is an individual, thus falling within the definition of "person" and satisfying the "person or body" requirement of Bankruptcy Code section 1517(a)(2). Accordingly, the Petitioners submit that this requirement for recognition of the BVI Proceedings, as set forth in Bankruptcy Code section 1517(a)(2), has been satisfied.

### C.     The BVI Proceedings Are A Foreign Main Proceeding

45.     Under Bankruptcy Code section 1517, a "foreign proceeding" (as defined in section 101(23)) may be recognized as either a "foreign main proceeding" or a "foreign non-main proceeding." *See* 11 U.S.C. § 1517(a)(1).

46.     Section 1502(4) defines "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). Thus, where, as here, a foreign proceeding is pending in the country in which the debtor has its center of main interests, such proceeding shall be recognized as a foreign main proceeding.

### 1.    Factors Applicable to COMI Determination

47.    The Bankruptcy Code does not include a definition of COMI.  However, section 1516(c) of the Bankruptcy Code states that, in the absence of evidence to the contrary, COMI is presumed to be the location of the debtor's registered office.  *See* 11 U.S.C. § 1516(c).  *See Tri-Continental*, 349 B.R. at 635 ("In effect, the registered office ... is evidence that is probative of, and that may in the absence of other evidence be accepted as proxy for, 'center of main interests.'"); *see also In re Betcorp Ltd.*, 400 B.R. at 291-93.

48.    Section 1516(c) thus creates a rebuttable presumption in favor of the location of the debtor's registered office as the debtor's center of main interests.  In this case, from the formation of the Kingate Funds in 1994 and 2000 to the present, the Kingate Funds' registered offices have at all times been located in the BVI.  *See* Pretlove Decl. ¶¶ 14-15.  As a result, there is a statutory presumption in favor of the BVI as the Kingate Funds' COMI.

49.    The statutory presumption is consistent with the reality that since at least June 2009, the Kingate Funds have been in liquidation under the supervision of the BVI Court and liquidators operating in the BVI.  *See* Morgan Decl. ¶ 32.

50.    The statutory presumption is also consistent with stakeholder expectations that they were dealing with funds that were registered in the BVI and, accordingly, were subject to liquidation proceedings in that jurisdiction.  That expectation would have come from materials including the Kingate Funds' Information Memoranda and their subscription agreements, which identified the BVI as the location of the Kingate Funds' incorporation.  *See* Pretlove Decl. ¶ 13; *see also id*. Exhibit 1, Information Memoranda for Kingate Global, dated September 22, 2008, at i, and Exhibit 2 Information Memorandum for Kingate Euro, dated September 22, 2008 at ii.

51.    Additionally, in applying section 1517(b)(1), bankruptcy courts have identified factors that point to the location of the debtor's COMI and have provided guidance as to the

weight to be given to them.  These factors, identified in *Bear Stearns*, supra (the "*Bear Stearns*

factors") include:  (1) the location of the debtor's headquarters; (2) the location of those who

actually manage the debtor; (3) the location of the debtor's primary assets; (4) the location of the

majority of the debtor's creditors or of a majority of the creditors who would be affected by the

case; and/or (5) the jurisdiction whose law would apply to most disputes.  *Bear Stearns*, 374 B.R.

at 128 (citing *In re Sphinx Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).

52.    While these factors are not exhaustive or necessarily applicable in all cases, they

are indicative of the facts a court may consider relevant.  *See In re Ascot Fund Limited*, 2019 WL

3782268, *5 (Bankr. S.D.N.Y.) ("The specific factors are not limiting; the COMI analysis permits

consideration of any relevant activities, including liquidation activities and administrative

functions … and a court may also consider the "expectations of creditors."); *In re Basis Yield

Alpha Fund (Master)*, 381 B.R. 37, 47 (Bankr. S.D.N.Y. 2008) (citing the *Bear Stearns* factors

and further noting that the court may also look to other factors); *see also* Transcript of

Proceedings at 15-16*, In re Saad Investments Finance Co. (No. 5) Ltd.*, Case No. 09-13985

(Bankr. D. Del. 2009) (considering factors other than those listed in *Bear Stearns* in making

determination that debtor's COMI was in the Cayman Islands).  Bankruptcy courts have also

observed that the COMI concept "generally equates with the concept of a 'principal place of

business' in United States law."  *In re Tri- Continental*, 349 B.R. at 634.

53.    For cases filed in this district, the Second Circuit has provided clear guidance that

the temporal focus for making a COMI determination is the time of the chapter 15 filing.  *See

Morning Mist Holdings ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d. Cir. 2013)

(holding that "a debtor's COMI should be determined based on its activities at or around the time

the Chapter 15 petition is filed").  *See also Ascot Fund*, 2019 WL 3782268, *9 (stating that

"courts are required to assess COMI on the date the chapter 15 petition is filed with a lookback period to the date of the commencement of the foreign proceeding to decide whether COMI has been manipulated").

54.     In addition to being statutorily mandated, determining COMI based on the present facts and circumstances, and without reference to the debtor's prior operational history, promotes consistency in COMI determination.  As stated by the court in *Betcorp*:

> [A]n inquiry into the debtor's past interests could lead to a denial of recognition in a country where a debtor's interests are truly centered, merely because of past activities.  This frustrates two of the purposes of the COMI inquiry – it decreases the effectiveness of the insolvency proceeding for which recognition is sought, and it may lead to a suboptimal distribution of the debtor's assets, inasmuch as non-recognition where recognition is due may forestall needed inter-nation cooperation.

400 B.R. at 291 (internal citations and footnotes omitted).

55.     A COMI determination also requires due consideration of factors that are objectively "ascertainable by third parties."  *Ascot Fund*, 2019 WL 3782268, *5 (quoting *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013)); *see also Betcorp*, 400 B.R. at 290 ("[C]ourts analyze a variety of factors to discern, objectively, where a particular debtor has its principal place of business.  This inquiry examines the debtor's administration, management, and operations along with whether reasonable and ordinary third parties can discern or perceive where the debtor is conducting these various functions"); *see also In re Ran*, 390 B.R. at 266 (noting that a debtor's center of main interests is determined by reference to criteria that are objective and ascertainable by third parties) (internal quotations and citations omitted); *In re Sphinx Ltd.*, 351 B.R. at 119 (basing COMI determination on objective factors); *accord Bear Stearns*, 389 B.R. 325, 336 (S.D.N.Y. 2008) ("The regulation adopting the [European Union Convention on Insolvency Proceedings] explains that `center of

main interests' means 'the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties.") (citing Council Reg. (EC) No. 1346/2000 13).

56.    A debtor may have only one center of main interests.  "Although it may seem obvious it is perhaps worth saying that the concept of a centre of main interests means that there can only be one such centre."  *In Cross Constr. Sussex Ltd v. Tseliki*, [2006] EWHC 1056 (High Court of Justice Chancery Division 2006), *quoted in In re Ran*, 390 B.R. at 263; *see also* Manfred Balz, *The European Union Convention on Insolvency Proceedings*, 70 Am. Bankr. 485 (Fall, 1996) ("[l]ogically, there can be only one center of main interests).

57.    A corollary of this principle is that even where some of the factors bearing on a COMI determination point to different jurisdictions, each debtor has a COMI that can be ascertained.  Courts have accordingly been mindful, in denying foreign main recognition, not to leave debtors without recourse to a jurisdiction where proceedings will be recognized as "main." As explained below, significant COMI factors point to the Kingate Funds' real seat in the BVI and, because no alternative jurisdiction has a plausible claim as the Kingate Funds' present COMI, the presumption of section 1516(c) of the Bankruptcy Code is not rebutted and COMI should be deemed to lie in the BVI.[4]

## 2.    The Kingate Funds' COMI is in the BVI

58.    Proper application of the factors identified by bankruptcy courts as bearing upon COMI compels a determination that the Kingate Funds' COMI is in the BVI.  As noted above,

---

[4]    Any argument that the Kingate Funds' COMI is Bermuda is misguided.  Although prior to the commencement of the BVI Proceedings, the Kingate Funds did conduct business in Bermuda, following appointment of the Joint Liquidators, the Kingate Funds' affairs have been managed out of BVI.  It is also worth noting that the Bermuda Proceedings were commenced as ancillary to the BVI Proceedings, and that two of the three joint liquidators in the Bermuda Proceedings are Mr. Pretlove and Ms. Fu, the Joint Liquidators of the Kingate Funds.

each of the Kingate Funds was incorporated in the BVI and, since inception, has maintained its registered offices there.

59.     Looking beyond place of registration to other evidence of the Kingate Funds' current COMI, it is apparent that although the Kingate Funds have multi-national contacts, none of these contacts point to a single COMI outside of the BVI.  When the relevant COMI factors are considered from the perspective of the present, as they must be pursuant to the provisions of chapter 15, and when appropriate weight is given to factors that are presently objectively ascertainable by third parties, and not mere artifacts of the pre-liquidation activities of Kingate Funds prior to the disclosure of the Madoff fraud, the factors that point to COMI in the BVI are overwhelmingly predominant.

60.     As noted above, since at least June 2009, all of the Kingate Funds' business affairs have been conducted by the Foreign Representatives.

61.     The investment management services previously provided to the Kingate Funds by KML and FIM in Bermuda are no longer relevant to a COMI determination, as those services were provided more than ten years ago.  All of the Kingate Funds' current business activities are centered in BVI, and BVI is the Kingate Funds' COMI.

62.     Set forth below is a discussion of the Kingate Funds' BVI and non-BVI interests, addressed within the framework of the Bear Stearns factors:

   a.  <u>Location of the Kingate Funds' Headquarters</u>:  Indisputably, the Kingate Funds only "nerve center" or "headquarters" is the BVI, from which location the Petitioners, in their capacity as liquidators, direct the administration and management of the interests of the Kingate Funds.  Pretlove Decl. ¶ 36.  The BVI Court has overseen the administration of the Kingate Funds since May 2009.  *Id*. ¶ 7; Morgan Decl. ¶ 12.  Pursuant to the BVI Act, the Kingate Funds are under the actual management of the Joint Liquidators, who are officers of the BVI Court and whose base of operations is the BVI.  Morgan Decl. ¶ 22.  Importantly, the location of the Kingate Funds' headquarters in BVI is a fact known, relied upon and objectively ascertainable by third persons.  Promotional materials, financial

statements and reports and other written materials have identified the BVI as location of the Kingate Funds' business. Pretlove Decl. ¶ 13 & Exhibits 1 and 2. Stakeholders and/or creditors of the Kingate Funds have received notice regarding the BVI Proceedings for the past ten years, apprising them that the management of the Kingate Funds' affairs is occurring in the BVI. Pretlove Decl. ¶ 36.

b.  <u>Location of Management</u>: Under the BVI Act, upon commencement of a liquidation proceeding, "the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted by [Part VI of the BVI Act]." BVI Act, § 175(l)(b); *see also* Morgan Decl. ¶ 29. By operation of this provision and the appointment of liquidators, the location of management of the Kingate Funds, i.e., the Joint Liquidators and their staff, is centered in the BVI. BVI Act, § 175(1)(b); Pretlove Decl. ¶ 36; Morgan Dec1. ¶ 28. While Ms. Fu is a Cayman resident, she operates as an "overseas" practitioner in accordance with the BVI insolvency legislation. Morgan Decl. ¶ 15. Mr. Pretlove is a resident of the BVI and licensed by the Financial Services Commission as an insolvency practitioner, and Ms. Fu operates under his oversight. Pretlove Decl. ¶ 2. The majority of the activities in respect of winding up the Kingate Funds is managed by Kalo professionals located in the British Virgins Islands. *Id*. ¶ 36. The BVI Court, as a practical matter, is also involved in the management of the Kingate Funds, as the Joint Liquidators are not permitted to take certain material actions without prior approval of that court. Morgan Decl. ¶ 19; see also BVI Act § 186(3) (providing that the BVI Court may provide that certain powers may only be exercised with the sanction of the Court).

c.  <u>Location of Creditors</u>:  Creditors and other stakeholders of the Kingate Funds are located in many jurisdictions around the world, including in many European countries, such that the location of creditors does not have a strong impact on a COMI analysis. *See* Pretlove Decl. ¶ 36.

d.  <u>Location of Tangible Assets</u>:  The only material tangible assets of the Kingate Funds are cash funds held on account. The Kingate Funds maintain bank accounts in BVI, the Cayman Islands and Bermuda, each of which holds cash that is subject to the control of the Foreign Representatives. The Kingate Funds' liquidation records are maintained primarily in the BVI. *Id.* ¶ 36.

e.  <u>Location of Claims and Contingent Assets</u>:  Important assets of the Kingate Funds include claims and causes of action. The primary, and most valuable assets of the Kingate Funds are their Customer Claims in the SIPA Proceeding. *Id.* ¶ 25. The Customer Claims are pending in this District, but once allowed, the proceeds of the distribution on account of those claims will be distributed to stakeholders in accordance with BVI law. Any such distribution scheme will likely require determinations and/or sanction from the BVI Court. *Id.* ¶ 36.

f.  <u>Other factors</u>:  Several other objective facts strongly point to the BVI as the Debtors' COMI. The Kingate Funds currently contract for ongoing services from several providers that are organized under the laws of the BVI, have offices in the BVI and employ residents of the BVI, including the liquidators' own staff, and Mourant, the Kingate Funds' BVI legal counsel. *Id*. In addition, correspondence

> sent to the Kingate Funds' stakeholders following the commencement of the BVI
> Proceedings advised such parties to direct communications concerning the
> Kingate Funds to the BVI offices of the Foreign Representatives in the BVI.  *Id*.

63.    Viewing the totality of the relevant contacts between the Kingate Funds and the various jurisdictions with which they have contacts and interests, it is clear that there is no jurisdiction other than the British Virgin Islands that supports a plausible claim as being the Kingate Funds' COMI.  The Foreign Representatives thus respectfully request that, on the basis of the foregoing identified factors and the other BVI contacts and interests identified in the Declarations of Paul Pretlove and Eleanor Morgan filed contemporaneously herewith, this Court (i) conclude that the Kingate Funds' COMI is situated in the British Virgin Islands, and (ii) recognize the BVI Proceedings as a "foreign main proceeding" within the meaning of Bankruptcy Code section 1502(4).

## II.    If the Court Concludes that the BVI Proceedings are NOT a Foreign Main Proceeding, They Should Be Recognized as a Foreign Nonmain Proceeding

64.    In the event Court concludes that the BVI Proceedings are not a "foreign main proceeding," then the Petitioners submit that the BVI Proceedings should be recognized as a "foreign nonmain proceeding" within the meaning of section 1502(5) of the Bankruptcy Code. As stated above, section 15.17(a) of the Bankruptcy Code provides that "an order recognizing a foreign proceeding shall be entered if (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502." 11 U.S.C. § 1517(a)(1).  Bankruptcy Code section 1502(5) defines "foreign nonmain proceeding" to mean "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5).

65.    "Establishment" is defined in Bankruptcy Code section 1502(2) as "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).

"Nontransitory economic activity" is not defined in the Bankruptcy Code, but the place where

such activity is conducted has been interpreted to mean "a local place of business." *See Bear

Stearns*, 374 B.R. at 131. Similar to the time of evaluating a debtor's COMI, whether the debtor

has an "establishment" in a country is also determined at the time of the filing of the chapter 15

petition. *See In re British Am.*, 425 B.R. at 915; *Lavie v. Ran*, 406 B.R. at 284-85.

66.    The nontransitory economic activity of the Kingate Funds is being carried out in

the British Virgin Islands. Since June 2009, the Joint Liquidators have actively managed the

Kingate Funds' business and assets from the BVI offices of Kalo (and its predecessors) in

Tortola, BVI.

67.    As discussed above, since June 2009, the Kingate Funds have been in liquidation

under the supervision of the BVI Court, and their business affairs have been managed by the

Foreign Representatives. These activities have been carried out in the BVI offices of Kalo (and

the BVI offices of the Foreign Representatives' former firms). Accordingly, each of the Debtors

has a "local place of business" in the British Virgin Islands because their winding-up activities

are based in that jurisdiction. Thus, each of the Kingate Funds has an "establishment" in the

BVI.

68.    Accordingly, in the event the Court denies recognition of the BVI Proceedings as

foreign main proceedings, it should conclude that the BVI Proceedings are foreign nonmain

proceedings, within the meaning of Bankruptcy Code section 1502(5).

### III.    The Petitions Satisfy the Requirements of Bankruptcy Code Section 1515 and Bankruptcy Rule 1007(a)(4)

69.    Recognition of a foreign proceeding under section 1517(a) of the Bankruptcy

Code requires that the petition meet the filing requirements of section 1515 of the Bankruptcy

Code. *See* 11 U.S.C. § 1517(a)(3). Bankruptcy Code sections 1515(b) and (c) require the

foreign representative to file with the petition for recognition a certified copy of the decision

commencing the foreign proceeding and appointing the foreign representatives and a statement

identifying all foreign proceedings with respect to the debtor that are known to the foreign

representative. *See* 11 U.S.C. § 1515(b), (c).

70.    The Foreign Representatives have satisfied these requirements. *See* Exhibits B

and C attached hereto (certified copies of Orders commencing the BVI Proceedings); Exhibits D

and E attached hereto (certified copies of Orders appointing the Joint Liquidators in the BVI

Proceedings); and Exhibit J attached hereto (11 U.S.C. § 1515(c) Statement of Foreign

Representatives).

71.    The Foreign Representatives have also satisfied the additional filing requirements

set forth in Bankruptcy Rule 1007(a)(4), by filing: (a) corporate ownership statements containing

the information described in rule 7007.1 of the Bankruptcy Rules, as required by Bankruptcy

Rule 1007(a)(4)(A), *see* Exhibit K attached hereto; and (b) lists containing the names and

addresses of all person or bodies authorized to administer the foreign proceedings of the Kingate

Funds and all parties to litigation pending in the United States in which the Kingate Funds are a

party at the time of the filing of the Petitions. *See* Exhibit L attached hereto.

## IV.    Recognition of the BVI Proceedings Would Not Be Manifestly Contrary To U.S. Public Policy

72.    The final requirement for recognition under Bankruptcy Code section 1517(a) is

that the relief sought must not be "manifestly contrary to the public policy of the United States."

*See* 11 U.S.C. § 1517(a) (providing that the entry of an order recognizing a foreign proceeding is

subject to section 1506 of the Bankruptcy Code). Bankruptcy Code section 1506 provides:

> Nothing in this chapter prevents the court from refusing to take an
> action governed by this chapter if the action would be manifestly
> contrary to the public policy of the United States.

11 U.S.C. § 1506.

73.     Bankruptcy Code section 1506 permits the courts to refuse to take an action governed by chapter 15 if such action would be manifestly contrary to the public policy of the United States, but this is an exception that Congress intended to be narrowly construed.  *See Tri-Continental*, 349 B.R. at 638 ("The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States ... [Its purpose] ... is to emphasize that public policy exception should be interpreted restrictively and that [provision] is only intended to be invoked under exceptional circumstances concerning matters of fundamental importance for the enacting State.") (citing the Guide to Enactment to the UNCITRAL Model Law on Cross-Border Insolvency, U.N. Gen. Ass., UNCITRAL 30th Sess., U.N. Doc. A/CN.9/442 (1997)).

74.     The exception to granting recognition based on public policy is a narrow exception that has no application in the present cases.  Instead, recognizing the BVI Proceedings as a foreign main proceeding would advance the express objectives of chapter 15 — the fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the Debtors, and the protection and maximization of the Debtors' assets.  *See* 11 U.S.C. § 1501(a).

75.     As noted above, Chapter 15 protection will materially aid the Joint Liquidators' efforts to protect the proceeds of its settlement with the Madoff Trustee so that those proceeds can be distributed to the Debtors' creditors through a BVI court approved process.  Accordingly, the Foreign Representatives respectfully submit that the final requirement for recognition of the BVI Proceedings as a foreign main proceeding under Bankruptcy Code section 1517(a) has been satisfied.

19-12853-smb    Doc 2    Filed 09/05/19    Entered 09/05/19 18:24:13    Main Document
Pg 27 of 30

**V.    Upon The Recognition of the BVI Proceedings as a Foreign Main Proceeding, the Automatic Stay Under Bankruptcy Code Section 362(a) Applies, By Virtue of Bankruptcy Code Section 1520(a)**

76.    Upon the recognition of a foreign proceeding as a "foreign main proceeding," a foreign representative is automatically entitled to the benefit of the relief conferred under Bankruptcy Code section 1520(a), including, without limitation, the automatic stay provided for in Bankruptcy Code section 362. *See* 11 U.S.C. § 1520(a)(1); see also 11 U.S.C. § 362(a) (providing for an automatic stay of proceedings against the debtor and property of the estate). Section 1520(a)(1) of the Bankruptcy Code provides:

> (a) Upon the recognition of a foreign proceeding that is a foreign main proceeding, (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States ….

*Id.*

77.    Recognition by this Court of the BVI Proceedings as a "foreign main proceeding" therefore has the immediate effect of implementing the automatic stay provided under Bankruptcy Code section 362(a) in respect of all actions and proceedings against the Debtors and their property in the United States. *See In re: Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 194 (Bankr. S.D.N.Y. 2017) (citing *Fairfield Sentry*, 714 F.3d at 133) (upon recognition of a foreign proceeding, the stay automatically comes into effect). Importantly, application of the automatic stay in this case is critical for the Joint Liquidators to effectively and properly administer the Debtors' assets in the United States because it will prevent third parties from attempting to divert the proceeds of the Debtors' Customer Claims for their own benefit, causing great harm to creditors and other stakeholders of the Kingate Funds.

**VI.    The Petitioners Request for Necessary And Appropriate Relief Pursuant to Bankruptcy Code Section 1521(a) Should be Granted**

78.    Upon recognition of the BVI Proceedings, whether as foreign main or foreign

nonmain proceedings, this Court is empowered to grant "any appropriate relief" pursuant to Bankruptcy Code section 1521(a), where such relief is necessary to effectuate the purpose of chapter 15 and to protect the Debtors' assets or the interests of the Debtors' creditors.  11 U.S.C. § 1521(a).  Relief under section 1521(a) is available only if the interests of the creditors and other interested entities, including the debtor and interested parties located outside of the United States, are sufficiently protected.  *See* 11 U.S.C. § 1522(a); *In re Rede Energia S.A.*, 515 B.R. 69, 94 (Bankr. S.D.N.Y. 2014); *In re CGG S.A.*, 579 B.R. 716, 720 (Bankr. S.D.N.Y. 2017); *see also In re Sphinx Ltd.*, 351 B.R. at 113 (noting that in enacting section 1522(a), "Congress directed the court to focus on the interests of all creditors and other interested parties, not just those of U.S. parties.") (emphasis in original).  Moreover, if the Court recognizes the BVI Proceedings as foreign nonmain proceedings, relief under Bankruptcy Code section 1521 is available where the Court is satisfied that the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding.  11 U.S.C. § 1521(c).

79.     Pursuant to section 1521(a), the Foreign Representatives request that this Court enter an Order granting additional necessary relief including, without limitation: (i) staying the commencement or continuation of proceedings concerning the Kingate Funds' assets, rights, obligations or liabilities, to the extent not stayed automatically under section 1520(a); (ii) staying all parties from executing against, interfering with or otherwise disposing of the Kingate Funds assets, including the Kingate Funds' Customer Claims asserted in the SIPA Proceeding and any proceeds thereof, to the extent not stayed automatically under section 1520; (iii) providing that the Orders issued by the BVI Court are recognized, granted comity, and entitled to full force and effect in accordance with their terms, and that such terms shall be binding and fully enforceable

28

in the United States; and (iv) entrusting the Foreign Representatives with the administration or realization of all of the Kingate Funds' assets that are located within the territorial jurisdiction of the United States, including prosecution of any causes of action belonging to the Kingate Funds. 11 U.S.C. § 1521(a).

80.    The relief requested by the Foreign Representatives under Bankruptcy Code section 1521(a) is necessary and appropriate to assist the BVI Court and the Petitioners in carrying out the effective administration of the BVI Proceedings, particularly if the Court recognizes the BVI Proceedings as a foreign nonmain proceeding.  In such case, without the relief provided for in section 1521(a), the BVI Court would not be able to ensure the fair and efficient administration of the BVI Proceedings in a manner that protects the interests of all of the Kingate Funds' stakeholders, nor would the Foreign Representatives be able to protect and maximize, without interference, the value of the Kingate Funds' assets in the United States for the benefit of the Kingate Funds' creditors and other stakeholders.  This relief is necessary to effectuate the purpose of chapter 15.

81.    Specifically, the Foreign Representatives request that this Court recognize and grant comity to the Orders issued by the BVI Court.  Granting comity to these orders will help ensure that no party interferes with the Foreign Representatives as they work to complete the BVI liquidation process and distribute funds to the Kingate Funds' stakeholders.  In addition, granting entrustment will ensure that the Foreign Representatives have full authority to realize and administer the Kingate Funds' assets within the United States, which will also facilitate an expeditious and efficient completion of the BVI Proceedings.

## <u>CONCLUSION</u>

For the foregoing reasons, the Petitioners respectfully request that this Court enter an

Order: (i) recognizing Kingate Global's BVI proceeding as a foreign main proceeding or, if not

so recognized, as a foreign nonmain proceeding; (ii) recognizing the Petitioners as foreign

representatives of the BVI Proceedings; (iii) recognizing and affirming the application of the

automatic stay provided by Bankruptcy Code section 362(a) pursuant to section 1520(a) of the

Bankruptcy Code; (iv) granting the additional relief requested herein pursuant to Bankruptcy

Code section 1521; and (v) granting such other relief as may be just and proper.

Dated: September 5, 2019
       New York, New York

QUINN EMANUEL URQUHART & SULLIVAN LLP

  /s/ Robert Loigman
Robert Loigman
Scott C. Shelley
Lindsay M. Weber
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
robertloigman@quinnemanuel.com
scottshelley@quinnemanuel.com
lindsayweber@quinnemanuel.com