Robert Loigman
Scott C. Shelley
Lindsay M. Weber
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Kingate Global Fund, Ltd., et. al, | Case No. 19-12853 |
| Debtors in Foreign Proceedings. | (jointly administered) |

**MOTION OF THE FOREIGN REPRESENTATIVES FOR ORDER
APPROVING SETTLEMENT AGREEMENT PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002
AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Petitioners Paul Pretlove and Tammy Fu, in their joint capacities as foreign representatives (the "Foreign Representatives") of the liquidation proceedings of Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro", and, together with Kingate Global, the "Kingate Funds" or the "Debtors") pending in the High Court of Justice, British Virgin Islands ("BVI"), Commercial Division (the "BVI Court"), in proceedings assigned Cases Nos. BVIHCV2009/163 and BVIHCV2009/164 (the "BVI Proceedings"), through their attorneys Quinn Emanuel Urquhart & Sullivan LLP, respectfully submit this motion (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as Exhibit A, approving, pursuant to section 105(a) of title 11 of the United States Code (as amended, the

"Bankruptcy Code") and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the settlement agreement (the "Settlement Agreement"), a copy of which is annexed hereto as Exhibit B, by and among (a) Irving H. Picard (the "Madoff Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll*, (b) and Paul Pretlove, Tammy Fu, and John C. McKenna (the "Joint Liquidators"), solely in their respective capacities as the Joint Liquidators of the Kingate Funds, both of which are BVI companies (each of the Madoff Trustee and the Joint Liquidators a "Settling Party" and collectively, the "Settling Parties"). In support of the Motion, the Foreign Representatives respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b) and 11 U.S.C. § 1501. Venue is proper in this district pursuant to 28 U.S.C. §§ 1410(a)(1) and (3). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

## BACKGROUND

2. The Kingate Funds were open-ended investment funds organized under the laws of the BVI. The Kingate Funds held managed accounts with BLMIS, the company established and operated by Bernard L. Madoff ("Madoff"). Throughout their existence, until mid-December 2008, when Madoff was arrested, the Kingate Funds raised money through subscriptions for their shares, which they invested by paying their surplus cash into an account managed by BLMIS on their behalf.

3. By reason of the fraudulent Ponzi scheme operated by Madoff and BLMIS, the Kingate Funds' investments purportedly held by BLMIS, did not in fact exist. On December 15, 2008 (the "SIPA Commencement Date"), the District Court entered a protective decree, to which

BLMIS consented, which, in pertinent part a) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA; b) appointed Baker & Hostetler LLP as counsel to the Madoff Trustee pursuant to section 78eee(b)(3) of SIPA; and c) removed the case to this Court pursuant to SIPA section 78eee(b)(4). On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7 estate with the BLMIS SIPA proceeding.

4. Since almost all of the Kingate Funds' assets were invested with BLMIS, the arrest of Madoff and the subsequent bankruptcy of BLMIS had a devastating effect on the Kingate Funds and their investors.

5. The Kingate Funds were placed into provisional liquidation on May 8, 2009 and were ultimately wound up by Orders of the BVI Court dated June 4, 2009 in Cases Nos. BVIHCV2009/163 (Kingate Euro) and BVIHCV2009/164 (Kingate Global). By those orders, the BVI Court appointed William R. Tacon and Richard F. Fogerty as joint liquidators of the Kingate Funds. Since that time, the liquidation of the Kingate Funds has been administered in the BVI by the joint liquidators (and their successors), under the supervision of the BVI Court.[1]

6. The Foreign Representatives filed petitions commencing these chapter 15 cases on September 5, 2019. The hearing on recognition is scheduled for 10 a.m. on October 8, 2019.

---

[1] By orders dated September 4, 2009, the Supreme Court of Bermuda directed that the Kingate Funds be wound up be wound up in insolvency proceedings in accordance with the procedures of the Bermuda Companies Act 1981. The joint liquidators in the Bermuda proceedings are Mr. Pretlove, Ms. Fu and John McKenna. Notwithstanding the opening of the ancillary Bermuda proceedings, the liquidation of the Kingate Funds has been centered in BVI since at least June 2009.

## BLMIS LITIGATION AND SETTLEMENT[2]

7.  The Kingate Funds are defendants in litigation commenced by the Madoff Trustee, who filed a complaint (the "Complaint") seeking to recover transfers made to the Kingate Funds by BLMIS, in the aggregate amount of more than $900 million.

8.  Specifically, on or about April 17, 2009, the Trustee commenced an adversary proceeding, which in its amended form has the caption *Picard v. Ceretti, et al.*, Adv. Pro. No. 09-1161 (SMB) (the "Adversary Proceeding"). In the Adversary Proceeding, the Trustee asserts that the Kingate Funds, as initial transferees, are liable to the BLMIS estate under sections 544, 547, 548, 550, 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law ("NY DCL") §§ 273-279) and the New York Civil Procedures Law, and seeks to avoid and recover transfers in an aggregate amount totaling $926,351,905 (the "Avoidance Claims"). In addition, the Adversary Proceeding seeks to disallow and equitably subordinate the Kingate Funds' customer claims.[3]

9.  On July 18, 2014, the Kingate Funds moved to dismiss the Complaint. By Order dated August 11, 2015, Judge Bernstein denied the motion to dismiss with respect to all counts except Count X (disallowance under 11 U.S.C. § 502(a)) and Count XII (equitable disallowance).

---

[2] The description below is a summary of the terms of the settlement. A more detailed description of the settlement and related events is set forth in the Settlement Agreement, and incorporated herein by reference.

[3] Although the Kingate Funds originally asserted customer claims totaling $734,956,540 for Kingate Euro and $2,714,140,694 for Kingate Global as of November 30, 2008, the Bankruptcy Court ruled that these claim amounts must be calculated using the "net investment method." This ruling was upheld by the Second Circuit Court of Appeals. Following a settlement between the Madoff Trustee and the IRS, the Madoff Trustee adjusted Kingate Global's net loss to $578,862,952.73, and Kingate Euro's net loss to $220,885,141.79, with aggregate net losses of $799,748,094.52.

10. On September 30, 2015, the Liquidators, on behalf of the Kingate Funds, filed an Answer disputing liability under all counts of the Complaint, except that the Liquidators admitted that certain transfers constitute avoidable transfers within the meaning of sections 544, 547, 548, 550 and 551 of the Bankruptcy Code, New York Debtor and Creditor Law §§ 273–279, New York Civil Procedure Law and section 78fff-2(c)(3) of SIPA, as applicable.

11. Beginning in 2015, the Settling Parties engaged in extensive document and testimonial discovery on the Madoff Trustee's claims and the Foreign Representatives' defenses ("Fact Discovery"). Following the conclusion of Fact Discovery, the Settling Parties engaged in mediation to resolve their disputes without the expense, delay and uncertainty of continuing the litigation about the matters described above. Ultimately, the Settling Parties determined to settle and resolve all of the disputes, claims, actions, defenses or liabilities (whether or not asserted) between them, subject to the terms and conditions specified in the Settlement Agreement.

**OVERVIEW OF THE SETTLEMENT AGREEMENT**

12. The Settlement Agreement resolves all disputed issues among the Settling Parties.

13. The key terms of the Settlement Agreement are as follows:

a) The Kingate Funds shall pay the Trustee $860,000,000, which constitutes 93% of all transfers made to the Kingate Funds over the life of the Funds.

b) Upon satisfaction of all the conditions to closing or waiver by the applicable party as stated in the Settlement Agreement, the Kingate Funds will have an allowed claim in the SIPA Proceeding in the amount of $1,659,748,094.52 (the "Allowed Claim") and shall be entitled to the full benefit of a SIPC customer advance under SIPA section 78fff-3(a). The Allowed Claim is equal to the Kingate Funds Net Equity Claim of $799,748,094.52, plus an increase of $860,000,000 under section 502(h) of the Bankruptcy Code, for a total allowed claim of $1,659,748,094.52.

c) The Settling Parties acknowledged that the Joint Liquidators are obligated to make distributions to the Kingate Funds' creditors and shareholders in accordance with BVI law. The Settling Parties also

5

acknowledged the Madoff Trustee's desire to maximize returns to the allowed claims of good faith customers of BLMIS. The Settling Parties agree to cooperate, to the extent allowed by BVI law and permitted by the BVI Court, to restrict distributions to certain of the Kingate Funds' creditors and shareholders in accordance with the protocol set out in the Settlement Agreement.

d) The Madoff Trustee will enter into mutual release agreements with each of the "Subsequent Transferee Defendants" (as defined in the Settlement Agreement) in the form attached as Annex D to the Settlement Agreement thus resolving all claims in the Adversary Proceeding.

e) The Madoff Trustee will release, acquit, and absolutely discharge the Kingate Funds on the specific terms set forth in the Settlement Agreement.

f) The Kingate Funds will release, acquit, and absolutely discharge the Madoff Trustee and all his agents and BLMIS and its consolidated estate, on the specific terms set forth in the Settlement Agreement.

g) The Madoff Trustee will dismiss with prejudice the actions listed in Annex B to the Settlement Agreement.

h) The closing of the Settlement Agreement will occur no later than the fifth business day after satisfaction or waiver (by the party in whose favor such condition is for) of the conditions to the closing as set forth in the Settlement Agreement.

i) The Settlement Agreement is subject to the approval of this Court (presiding over the SIPA liquidation proceeding of BLMIS and the substantively consolidated Chapter 7 Madoff estate), the BVI court presiding over the BVI Proceedings and the Bermuda court presiding over the Bermuda proceedings.

14. The Settlement Agreement was approved by order of this Court in the BLMIS SIPA liquidation and the Chapter 7 Madoff case on August 6, 2019.

15. The Settlement Agreement was approved by orders of the BVI Court in the liquidations of the Kingate Funds on September 18, 2019.

16. By virtue of the Kingate Funds' chapter 15 cases, approval of this Court, under Bankruptcy Code section 1520(a)(2) is also required.

**RELIEF REQUESTED**

17. By this Motion, the Foreign Representatives seek entry of an order, substantially in the form of the Proposed Order attached hereto as Exhibit A, approving the Settlement Agreement.

**DISCUSSION**

18. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." In order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interest of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F. 3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968)).

19. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In Refco, Inc.),* 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs,* 156 B.R. at 426 ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

20. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

> (a) the probability of success in the litigation;
> (b) the difficulties associated with collection;
> (c) the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
> (d) the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc*., 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied,* 506 U.S. 1088 (1993)).

21. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.,* 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.,* 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also be considered. *Nellis,* 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp., Inc.,* 134 B.R. at 505 (quoting *In re Blair,* 538 F.2d 849, 851 (9th Cir. 1976)).

22. The Settlement Agreement is in the best interests of the Kingate Funds and should be approved. It furthers the interests of the Kingate Funds by putting an end to many years of litigation that tied up hundreds of millions of dollars, and permitting distributions to stakeholders of the Kingate Funds in connection with the BVI Proceedings.

23. Specifically, the Kingate Funds will receive, and stakeholders of the Kingate Funds will share in, the distribution of the proceeds of an aggregate allowed claim of

$1,659,748,094.52. The Kingate Funds will be entitled to a current distribution of more than 66.6% of the amount of their allowed claim, or more than $1.1 billion, and will use $860 million of that amount to make the required settlement payment to the Madoff Trustee. The balance of approximately $245 million, plus any future distributions from the BLMIS estate, will be available for distribution to stakeholders of the Kingate Funds. Absent the Settlement Agreement, distributions, if any, to stakeholders would be uncertain as to timing and amount. The Settlement Agreement provides certainty that stakeholders will receive a substantial distribution.

24. Notably, the settlement resolves the Madoff Trustee's claims for equitable subordination, which if successful, would have resulted in stakeholders of the Kingate Funds recovering nothing. Instead, they will receive more than $245 million

25. In sum, the Foreign Representatives submit that the Settlement Agreement should be approved to avoid further lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable compromise of the claims asserted by the Madoff Trustee in the Adversary Proceeding, and the claims the Foreign Representatives asserted against BLMIS.

26. Because the Agreement is well within the "range of reasonableness" and confers substantial benefits to the Kingate Funds, the Foreign Representatives respectfully request that the Court enter an order approving the Settlement Agreement.

## NOTICE

27. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) the Debtors; (ii) the Office of the United States Trustee; (iii) the Madoff Trustee, (iv) all creditors of the Debtors, and (v) all parties that filed an appearance in these cases. The Foreign Representatives submit that no other or further notice is required.

28. No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Foreign Representatives respectfully request that this Court enter an Order, substantially in the form attached hereto as Exhibit A, approving the Settlement Agreement, and granting such other and further relief as is just and proper.

Dated: September 27, 2019
      New York, New York

QUINN EMANUEL URQUHART & SULLIVAN LLP

 /s/  Robert Loigman
Robert Loigman
Scott C. Shelley
Lindsay M. Weber
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
robertloigman@quinnemanuel.com
scottshelley@quinnemanuel.com
lindsayweber@quinnemanuel.com