WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
Glenn M. Kurtz
Brian D. Pfeiffer
Andrew W. Hammond
Thomas E. MacWright

*Attorneys for Deutsche Bank Securities Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) |
| | ) Case No. 19-12853 (SMB) |
| Kingate Global Fund, Ltd., *et al.*, | ) (Jointly Administered) |
| | ) |
| Debtors in a Foreign Proceeding. | ) Chapter 15 |
| | ) |

## DEUTSCHE BANK SECURITIES INC.'S LIMITED
## <u>OBJECTION TO THE PETITION FOR RECOGNITION OF THE BVI PROCEEDINGS</u>

# Table of Contents

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND .................................................................................................3

A.    The Kingate Funds' Claims Against the Madoff Estate Were the Subject of a 10-Year Litigation with the Madoff Trustee.................................................................................. 3

B.    DBSI and Kingate Funds Enter into a Binding Agreement to Sell "Allowed" Kingate Claims ................................................................................................................................ 4

C.    Kingate Funds Initiate Litigation to Compel DBSI to Close on the Transaction Without Owning Claims in the Amount or Form Required by the Agreement.................. 5

D.    A Settlement Agreement Resolving the Adversary Proceeding is Approved and the Kingate Funds Nowhave Claims in the Form they Agreed to Sell.................................... 8

E.    The Kingate Funds Seek Chapter 15 Protection Solely to Prevent DBSI from Commencing Litigation to Liquidate Its Claim ................................................................ 9

F.    DBSI Is Entitled To Commence Litigation to Prove Its Claim ...................................... 10

ARGUMENT .......................................................................................................................11

A.    Bad Faith is "Cause" to Deny or Limit Relief Granted Upon Recognition...................... 11

B.    These Cases Were Filed Solely to Gain a Litigation Advantage in a Two-Party Dispute 15

C.    The Kingate Funds Seek, in Bad Faith, to Deprive DBSI of its Contractually Agreed Forum ............................................................................................................................... 14

D.    Other Factors Present Here Constitute "Cause" to Limit the Chapter 15 Stay................. 16

    1.    The Standards................................................................................................... 16

    2.    Permitting DBSI to Liquidate its Claims will Not Interfere with, but Rather will Facilitate, the Administration of the BVI Estate ........................................... 18

    3.    Permitting DBSI to Liquidate its Claim Will Not Prejudice Creditors ............... 19

    4.    The Interests of Judicial Economy and Expediency Weigh in Favor of Having the District Court Adjudicate this Non-core, Contract Dispute........................... 20

    5.    The Balance of Harms Weighs Decisively in DBSI's Favor................................ 21

CONCLUSION .....................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anchev v. 335 W. 38th St. Coop. Corp. (In re Anchev)*, No. 99 B 45846, 2009
 Bankr. LEXIS 906 (Bankr. S.D.N.Y. Apr. 15, 2009) ................................................16

*Barber v. Arnott (In re Arnott)*, 512 B.R. 744 (Bankr. S.D.N.Y. 2014) .......................18

*Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160 (2d Cir. 1979) ......................................16

*British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*, 488 B.R. 205
 (Bankr. S.D. Fla. 2013) .............................................................................................13

*Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship*, 183 B.R. 682 (S.D.N.Y. 1994) ..............17, 19, 20

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304
 (2d Cir. 1997) ...........................................................................................................14

*Casse v. Key Bank Nat'l Assoc'n (In re Casse)*, 198 F.3d 327 (2d Cir. 1999) ..............13

*Green Point Bank v. Treston*, 188 B.R. 9 (S.D.N.Y. 1995) .........................................13

*In re AMC Realty Corp.*, 270 B.R. 132 (Bankr. S.D.N.Y. 2001) .................................13

*In re Artisanal 2015, LLC*, No. 17-12319, 2017 Bankr. LEXIS 3813 (Bankr.
 S.D.N.Y. Nov. 3, 2017) .........................................................................................14, 17

*In re Breitburn Energy, L.P.*, 571 B.R. 59 (Bankr. S.D.N.Y. 2017) .......................19, 23

*In re Cole*, 202 B.R. 356 (Bankr. S.D.N.Y. 1996) .....................................................18

*In re Creative Fin. Ltd. (In Liquidation)*, 543 B.R. 498 (Bankr. S.D.N.Y. 2016) ..................12, 13

*In re Energy Coal S.P.A.*, 582 B.R. 619 (Bankr. D. Del. 2018) .............................19, 23

*In re Fraternal Composite Serv., Inc.*, 315 B.R. 247 (Bankr. N.D.N.Y. 2003) .............14

*In re G.S. Distribution*, 331 B.R. 552 (Bankr. S.D.N.Y. 2005) .................................18

*In re HBA E., Inc.*, 87 B.R. 248, 263 (Bankr. E.D.N.Y. 1988) ...............................12, 15

*In re Ionosphere Clubs, Inc.*, 133 B.R. 5 (S.D.N.Y. 1991) .........................................21

*In re Leibowitz*, 147 B.R. 341 (Bankr. S.D.N.Y. 1992) ...............................................23

*In re Millard*, 501 B.R. 644 (Bankr. S.D.N.Y. 2013) ................................................12

*In re N.Y. Med. Grp., P.C.*, 265 B.R. 408 (Bankr. S.D.N.Y. 2001)....................................17, 18, 19

*In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169 (Bankr. S.D.N.Y. 2017) ....................16

*In re Oi S.A.*, No. 16-11791, 2018 Bankr LEXIS 2053 (Bankr. S.D.N.Y. July 9, 2018) .....................................................................................................................................22

*In re Phila. Athletic Club, Inc.*, 9 B.R. 280 (Bankr. E.D. Pa. 1981).......................................19, 21

*In re Project Orange Assocs., LLC*, 432 B.R. 89 (Bankr. S.D.N.Y. 2010) ..................................20

*In re Qimonda AG*, 482 B.R. 879 (Bankr. E.D. Va. 2012)...........................................................19

*In re Residential Capital*, No. 12-12020, 2012 Bankr. LEXIS 3624 (Bankr. S.D.N.Y. Aug. 7, 2012) ...............................................................................................15

*In re Reyes*, No. 14-13233 (SMB), 2015 Bankr. LEXIS 2575 (Bankr. S.D.N.Y. Aug. 4, 2015) .........................................................................................................................15

*In re Sanjel (USA) Inc.*, No. 16-50778, 2016 Bankr. LEXIS 2771 (Bankr. W.D. Tex. July 28, 2016) ...............................................................................................................22

*In re Serviços de Petróleo Constellation S.A.,* No. 18-13952 [D.E. 96] (S.D.N.Y May 17, 2019)....................................................................................................................17

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286 ...............................................................................17

*Jaffé v. Samsung Elecs. Co.*, 737 F.3d 14 (4th Cir. 2013) ..........................................................22

*Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re SPhinX, Ltd.)*, 371 B.R. 10 (S.D.N.Y. 2007)...................................................................................................12

*Metz v. Poughkeepsie Sav. Bank, FSB (In re Metz)*, 165 B.R. 769 (Bankr. E.D.N.Y. 1994) ........................................................................................................................21

*Milne v. Johnson (In re Milne)*, 185 B.R. 280 (N.D. Ill. 1995) ..................................................21

*Nw. Airlines, Inc. v. L.A. (In re Nw. Airlines Corp.)*, 384 B.R. 51 (S.D.N.Y. 2008)....................20

*Pierce v. Breitburn Energy (In re Breitburn Energy Partners L.P.)*, No. 16-01198, 2018 Bankr. LEXIS 1336 (Bankr. S.D.N.Y. May 7, 2018)......................................................18

*Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, No. 09 ................................................21

*Stranz v. Ice Cream Liquidation (In re Ice Cream Liquidation, Inc.*), 281 B.R. 154 (Bankr. D. Conn. 2002)...............................................................................................18, 20

*Underwood v. Hilliard (In re Rimsat, Ltd.)*, 98 F.3d 956 (7th Cir. 1996) ...................................12

## STATUTES AND RULES

11 U.S.C. § 362 ...................................................................................................15

11 U.S.C. § 1501 .................................................................................................11

11 U.S.C. § 1517 ..........................................................................................1, 12, 13

11 U.S.C. § 1520 .................................................................................................10

11 U.S.C. § 1521 .................................................................................................17

11 U.S.C. § 1522 .................................................................................................15

28 U.S.C. § 157 ..................................................................................................21

Deutsche Bank Securities Inc. ("DBSI"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Verified Petition of Foreign Representatives Paul Pretlove and Tammy Fu in Support of Application of Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. for Recognition of Foreign Main Proceedings Pursuant to Section 1517 of the Bankruptcy Code and Seeking Related Relief* [D.E. 2] (the "Verified Petition"). In support of its Objection, DBSI incorporates the accompanying *Declaration of Andrew W. Hammond*. In further support of this Objection, DBSI respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      This case concerns a two-party dispute about a "firm, irrevocable, and binding" agreement to sell to DBSI the Kingate Funds' claims in connection with the Madoff fraud, pursuant to a trade confirmation agreement (the "Agreement") that the Kingate Funds' joint liquidators (the "JLs") entered into with DBSI post-petition. (Hammond Decl., Ex. A, Agreement dated August 24, 2011 at 1) The Kingate Funds have filed this Chapter 15 proceeding for the improper purpose of trying to eliminate entirely DBSI's right to sue on the Agreement to liquidate its claim (or perhaps to eliminate DBSI's right to bring its claim in New York, the contractually agreed to exclusive venue for the claim). Specifically, the Kingate Funds seek to "enjoin[] the commencement of any suit, action or proceeding in the territorial jurisdiction of the United States to resolve any dispute arising out of the BVI Proceedings, the Madoff Settlement, or any orders issued by the BVI Court…." (Verified Petition, Ex. A, Proposed Order) Other than the relief sought by DBSI herein, there is no other relief sought or issues raised in this case. The Kingate Funds have not cited any authority for precluding DBSI from proving and liquidating its claim (or from requiring DBSI to litigate in the BVI its claim under a New York contract, governed by New York law, with a provision establishing exclusive venue in New York).

1

2.     The Kingate Funds have admitted, indeed advocated, that the Agreement is binding and enforceable, contains all of the essential terms of the sale, and that the parties were obligated to negotiate in good faith the non-essential terms of the final documentation for the sale of "Allowed"[1] Kingate Claims (defined below).  In 2011, the JLs, on behalf of the Kingate Funds, brought litigation in the United States District Court for the Southern District of New York to compel DBSI to close the sale, though it did not yet have an "Allowed" Kingate Claim to sell, which is a condition of the Agreement.  The Kingate Claims are on the verge of becoming Allowed, and the Kingate Funds have now reversed course and seek to repudiate the Agreement and enjoin DBSI from pursuing its claim.  The reason for the reversal is simple.  Since 2011, the market value of the Kingate Claims has increased.

3.     DBSI's state law claim is a non-core dispute under a post-petition contract.  Chapter 15 is not a means to bar claims or to facilitate forum shopping for two party disputes involving state law, non-bankruptcy claims.  DBSI respectfully asks that if the Kingate Funds are granted recognition, then this Court modify the relief granted to allow DBSI to file a lawsuit to prove and liquidate its claims against the Kingate Funds in district court. [2]  This would allow DBSI to adjudicate its rights under the Agreement in the contractually agreed-to forum, which is also the

---

[1]     The Agreement defines "Allowed" as follows: "allowed as a valid, enforceable, liquidated, non-contingent, undisputed, unavoidable, and unsubordinated claim that is not subject to any actual or potential avoidance, reduction, set-off, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise, and whether pursuant to Section 510(c) of the United States Bankruptcy Code or otherwise), counterclaim, cross-claim, defenses, disallowance (whether under section 502(b), (d), or (e) of the United States Bankruptcy Code or otherwise), impairment, objection, or any other challenges under any applicable law, whether foreign or domestic."  Hammond Decl., Ex. A., Agreement dated August 24, 2011 at 1.

[2]     In paragraphs 79 and 81 of the Verified Petition, the Kingate Funds ask this Court to recognize and grant comity to "the Orders issued by the BVI Court"  Verified Pet. ¶¶ 79, 81.  The Verified Petition, however, does not define "Orders."  To the extent the Kingate Funds' ask this Court to recognize and grant comity to orders of the BVI Court that were not attached to the Verified Petition, DBSI objects.  Given that the BVI Proceedings' dockets are not publicly available and that creditors do not have access to any other orders that have or will be entered by the BVI Court, granting any unidentified BVI court orders recognition and comity would not be appropriate here.

*same court* in which the Kingate Funds brought the *same contractual dispute* under the *same agreement* between the *same parties*.

4. DBSI intends to serve discovery in support of this Objection and will supplement its Objection as appropriate.[3]

## FACTUAL BACKGROUND

**A. The Kingate Funds' Claims Against The Madoff Estate Were The Subject Of A 10-Year Litigation With The Madoff Trustee**

5. In November 2008, Bernard Madoff publicly confessed that the Bernie L. Madoff Investment Securities LLC ("BLMIS") was a massive fraud, revealing the largest Ponzi scheme in history. Immediately following Madoff's confession, BLMIS was placed into a liquidation proceeding under the Securities Investor Protection Act (the "SIPA Proceeding").

6. For years leading up to the November 2008 collapse of BLMIS, the two Kingate Funds acted as so-called Madoff "feeder funds," investing billions of their customers' assets into BLMIS. (Hammond Decl., Ex. B, Complaint ¶ 2; *Declaration of Paul Pretlove* [D.E. 3]("Pretlove Decl.") ¶ 16)) Upon the commencement of the SIPA Proceeding, the Kingate Funds lost almost all of their assets. (Pretlove Decl. ¶ 18) As a result, the Kingate Funds filed for the appointment of the JLs in the Eastern Caribbean Supreme Court in the High Court of Justice of the British Virgin Islands (the "BVI Court") on May 6, 2009, which the BVI Court granted on June 4, 2009. (Pretlove Decl. ¶ 7) Accordingly, at all times relevant to this opposition, the Kingate Funds have been in liquidation, subject to a formal Winding Up By Court process under the direction of the BVI Court (the "BVI Proceedings"). (Pretlove Decl. ¶ 7; Verified Petition, Ex. B, C-V) The

---

[3] DBSI reserves its right to file a motion to lift stay if necessary.

Kingate Funds also have an ancillary proceeding pending before the Supreme Court of Bermuda (the "Bermuda Court"). (Pretlove Decl. ¶ 8; Verified Petition, Ex. F, G)

7.      In April 2009, the trustee overseeing the SIPA Proceeding (the "Madoff Trustee") and the administration of the BLMIS estate (the "Madoff Estate") commenced an adversary proceeding against the Kingate Funds and their former principals for their alleged conduct in connection with the Madoff fraud (the "Adversary Proceeding"). (*Picard v. Ceretti et al.,* No. 09-01161 (SMB) (Bankr. S.D.N.Y. 2009); *see also* Pretlove Decl. ¶ 19) The Madoff Trustee sought, among other remedies, the return of the nearly $1 billion the Kingate Funds redeemed from BLMIS prior to the revelation of the Madoff fraud. (Pretlove Decl. ¶ 19; *Picard v. Ceretti et al,* No. 09-01161 (SMB) [D.E. 100 and 413](Bankr. S.D.N.Y. Mar. 17, 2014 and July 17, 2019)) The Madoff Trustee also sought to disallow and subordinate any claims the Kingate Funds may have against the Madoff Estate. (Pretlove Decl. ¶ 20)

8.      Generally, victims of the Madoff fraud, have two claims relating to BLMIS—a "Customer Claim" and a "Remission Claim." The Customer Claim relates to claims held by victims in the assets recovered by the Madoff Trustee on behalf of the Madoff Estate. (Pretlove Decl. ¶ 20) The Remission Claim relates to claims victims have to assets in the "Forfeiture Fund" established by the United States Department of Justice for distribution to victims of the Madoff fraud. (Hammond Decl., Ex. C, Answer and Counterclaim, ¶ 8) In 2011, the Kingate Funds decided to sell their Customer Claims and Remission Claims (collectively, the "Kingate Claims").

**B.      DBSI and Kingate Funds Enter Into A Binding Agreement To Sell "Allowed" Kingate Claims**

9.      On August 24, 2011, DBSI and the Kingate Funds executed the Agreement, which provides that it is a "firm, irrevocable and binding agreement (the 'Transaction') [for the Kingate Funds] to sell the Claims" to DBSI. (Hammond Decl., Ex. A, Agreement dated August 24, 2011

at 1)  The terms of the Agreement are subject to the execution of sales documentation "reasonably and mutually agreed between Seller and Buyer and which Seller and Buyer shall negotiate in good faith."  (*Id*.)

10.     The Agreement includes a New York choice of law provision and an agreement that disputes will be brought exclusively in New York:

> This Confirmation Letter shall be governed by and construed in accordance with the laws of the State of New York, without regard to any conflicts of law provisions that would require the application of the laws of any other jurisdiction.  Any controversies arising between Seller and Buyer under this Confirmation Letter and in connection with, or in relation to, the transaction contemplated herein will be determined in the federal or state courts located in the State of New York and the borough of Manhattan.

(*Id.*)

11.     Following execution of the Agreement, the parties worked to finalize the documentation, but a dispute emerged regarding whether the Agreement required the Kingate Funds to deliver Allowed Remission Claims to DBSI as part of the transaction or merely to use their best efforts to do so.  (Hammond Decl., Ex. C, Answer and Counterclaim, ¶¶ 15-16)

### C.     Kingate Funds Initiate Litigation To Compel DBSI To Close The Transaction Without Owning The Claims Required By The Agreement

12.     The Kingate Funds filed litigation against DBSI in the district court in December 2011 to enforce the terms of the Agreement and compel DBSI to close the transaction.  *Kingate Glob. Fund Ltd. v. Deutsche Bank Sec. Inc.*, No. 11-cv-9364 (DAB) (S.D.N.Y. 2011) (Batts, J.) (the "2011 Litigation").  The Kingate Funds explicitly recognized then that the Confirmation Letter requires that "[a]ny controversies arising between Seller and Buyer under this Confirmation Letter and in connection with, or in relation to, the transaction contemplated herein will be determined in the federal or state courts located in the State of New York and the borough of Manhattan." (Hammond Decl., Ex. B, Kingate Compl. ¶ 13; Ex. A, Agreement dated August 24, 2011 at 3)

The Kingate Funds further admitted that the Agreement constituted a "firm, irrevocable and binding" commitment that contained "all essential terms of the parties' sale and purchase[.]" (Hammond Decl., Ex. B, Kingate Compl. ¶ 26)  The Kingate Funds sought a "declaration that the [Agreement] executed between Deutsche Bank and the Kingate Funds constitutes a binding agreement for the purchase and sale of the Claims specified in the [Agreement]." (*Id.* ¶ 57)

13.     On January 11, 2012, DBSI responded to the Kingate Funds' allegations by Answer and Counterclaim, and alleged that the Agreement was "made expressly subject to the parties' negotiation and execution of a mutually agreeable Purchase and Sale Agreement ("PSA"), which would set forth all of the terms and conditions governing the transaction." (*Id.* ¶ 1)  DBSI also alleged that the Agreement did not bind DBSI *to purchase* the Kingate Claims given that two conditions had not be satisfied with respect to the Kingate Claims: (i) the Customer Claims were not yet allowed by the Madoff Trustee against the BLMIS estate (*Id.* ¶ 5), and (ii) DBSI had not received any assurance that the Remission Claims would be entitled to recover on a *pro rata* and unsubordinated basis with all other claims against the Forfeiture Fund.  As the Madoff Trustee was challenging the validity of the Kingate Claims in the Adversary Proceeding, the Kingate Funds did not possess "claims in the form they have proposed selling to DBSI[.]"  (Hammond Decl., Ex. C, Answer and Counterclaim ¶ 3)  Thus, "the settlement with the Madoff Trustee is the event that will create the bundle of rights the Kingate Funds seek to sell." (*Id.* ¶ 5)

14.     While the 2011 Litigation was pending, DBSI and the Kingate Funds continued to negotiate with each other as well as with the Madoff Trustee toward a resolution of the Adversary Proceeding and final documentation of the transaction outlined in the Agreement.  In June 2012, counsel for the Kingate Funds asked the district court to delay the commencement of discovery, advising the court that they were "hopeful that an additional delay to the start of discovery will

lead to a resolution of the litigation." (Hammond Decl., Ex. D, Ltr. to Hon. Deborah A. Batts dated June 1, 2012) Meanwhile, DBSI and the Kingate Funds continued to negotiate with each other and the Madoff Trustee in what the Kingate Funds described as "fruitful" negotiations toward a resolution of the Adversary Proceeding and final documentation of the transaction outlined in the Agreement. From late-2012 to early-2013, the parties continued to negotiate and exchanged draft settlement agreements and final documentation for the sale of the Kingate Claims.

15. On November 22, 2013, the Kingate Funds alleged that pursuant to recently published Department of Justice guidelines it did not have any right to recover from the Forfeiture Fund. Counsel for DBSI responded to counsel for the Kingate Funds that, nonetheless, the Agreement "is in full force and effect." DBSI further noted that "[a]ny impairment of the Kingate Funds' interest in the Madoff Victim Fund…would not excuse the Kingate Funds' contractual obligations under the [Agreement.]" Thus, DBSI made clear that the Agreement continued to bind the Kingate Funds to negotiate final documentation with respect to the transfer of the Kingate Claims, which the Kingate Funds did not challenge.

16. In January 2014, the 2011 Litigation was voluntarily dismissed by the parties without prejudice and they continued to negotiate, though the Kingate Funds had not yet satisfied the condition of having allowed claims. The Kingate Funds asserted that such dismissal would "remove a potential impediment to the successful negotiation of definitive documentation regarding the sale of the Claims." *Kingate Glob. et al v. Deutsche Bank Sec., Inc.,* No. 11-cv-09364(DAB) [D.E. 18] (S.D.N.Y. Jan. 2, 2014). From 2014 through at least the end of 2018, DBSI and the Kingate Funds maintained ongoing communication regarding the status of the Adversary Proceeding and acted in a manner consistent with the binding nature of the Agreement. There was a recognition by the Kingate Funds and DBSI that it made sense to postpone expensive litigation

over the terms of the Agreement pending the resolution of litigation between the Kingate Funds and Madoff Trustee. At that point, the parties would have certainty regarding the Kingate Claims at issue and would be better positioned to avoid the need for litigation. The Kingate Funds and the Madoff Trustee, however, did not reach a settlement in this period.

17.    In May 2019, DBSI learned that the Madoff Trustee was entering into mediation with the Kingate Funds that could potentially resolve the Adversary Proceeding. DBSI advised the Kingate Funds that DBSI was "ready and willing to provide support to Kingate in the mediation or otherwise in an effort to facilitate the resolution of the dispute between BLMIS and Kingate, and in turn permit the transactions contemplated by the Trade Confirm to be consummated." At that time-for the first time-the Kingate Funds advised DBSI that they did not consider the Agreement "binding", reversing their own prior position. Since then, the Kingate Funds have refused to engage in good faith negotiations with DBSI on final documentation of the Agreement.

**D.    A Settlement Agreement Resolving The Adversary Proceeding Is Approved And The Kingate Funds Now Have Claims In The Form They Agreed To Sell**

18.    The Kingate Funds and the Madoff Trustee entered into a settlement agreement dated June 26, 2019 (the "Settlement Agreement"). On July 17, 2019, the Madoff Trustee filed a motion with the Bankruptcy Court seeking approval of the Settlement Agreement. *Picard v. Ceretti et al,* No. 09-01161 (SMB) [D.E. 413] (Bankr. S.D.N.Y. July 17, 2019). On August 6, 2019, the Bankruptcy Court entered an order approving the Settlement Agreement. *Picard v. Ceretti et al,* No. 09-01161 (SMB) [D.E. 417] (Bankr. S.D.N.Y. Aug. 6, 2019). DBSI understands that the Settlement Agreement was also approved by the BVI Court, but that approval by the Supreme Court of Bermuda remains outstanding. The Settlement Agreement resolves the Adversary Proceeding and provides that the Customer Claims are "Allowed" claims of the BLMIS estate, satisfying the condition of the Agreement.

**E.     The Kingate Funds Seek Chapter 15 Protection Solely To Prevent DBSI From Commencing Litigation To Liquidate Its Claim**

19.     On September 5, 2019, the Kingate Funds commenced this Chapter 15 proceeding. [D.E. 1][4]  Simultaneously, the Kingate Funds filed the Verified Petition [D.E. 2] and submitted declarations of Paul Pretlove [D.E. 3] and Eleanor Morgan [D.E. 4].[5]

20.     This is, in effect, a single asset bankruptcy case that concerns the Madoff settlement proceeds:

- "The Foreign Representatives seek chapter 15 relief at this time to protect their recent settlement (the "Madoff Settlement")….In order to protect these funds so that they may be distributed to creditors of the Kingate Funds through a distribution process overseen by the BVI Court, the Foreign Representatives have determined to seek chapter 15 protection." (Verified Petition ¶ 2).

- "As discussed in more detail below, the JLs seek chapter 15 relief at this time to protect their recent settlement (the "Madoff Settlement") with Irving Picard, the trustee (the "Madoff Trustee") for the bankruptcy estate of Bernard L. Madoff Investment Securities LLC ("BLMIS")."  (Pretlove Decl. ¶ 4).

21.     The sole purpose of the Chapter 15 filing is to prohibit DBSI from pursuing litigation on the Agreement, at least in the United States, to liquidate its claim:

- "The JLs *are concerned that DB may initiate litigation* against the Kingate Funds in the United States…."  (Verified Petition, § E ¶ 29; *see also* Pretlove Decl. ¶ 33) (emphasis added).

- "In order to protect the interests of stakeholders of the Kingate Funds from *purported creditors like DB* seeking entitlement to the Kingate Funds' now-significant U.S. assets, the JLs seek recognition of the BVI Proceedings and protection under Chapter 15."  (Verified Petition ¶ 30; Pretlove Decl. ¶ 34) (emphasis added).

- "News of the Madoff Settlement has prompted certain purported creditors of the Kingate Funds to assert entitlement to funds received by the Kingate

---

[4]     The chapter 15 cases of Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. are being jointly administered under Case No. 19-12853.  All citations herein are to the Kingate Global Fund docket and pleadings.

[5]     The first day pleadings of Kingate Euro Fund, Ltd are identical to Kingate Global Fund, Ltd.

> Funds on account of their soon-to-be allowed Customer Claims. ***In particular, Deutsche Bank ("DB")***, with whom the JLs engaged in negotiations to sell their claims back in July 2011…."). (Pretlove Dec. ¶ 26) (emphasis added); (Verified Petition § D ¶¶ 22-28).

22.     The Kingate Funds do not identify any creditors that have or may assert claims in respect of the Kingate Claims other than DBSI. Indeed, the only parties that appear on the debtors' service lists are (i) DBSI and (ii) the Madoff Trustee (given the pending Adversary Proceeding). [D.E. 15]

23.     The Kingate Funds' requested relief is to avoid DBSI's claim by enjoining litigation to liquidate it. (Verified Petition ¶ 31(e)) ("to the extent not already provided in 11 U.S.C. § 1520, enjoining all creditors ***and other persons***, including creditors ***and purported creditors*** of the Kingate Funds from (i) disposing or otherwise taking any action against any property of the Kingate Funds located within the territorial jurisdiction of the United States; and (ii) taking or continuing any act to obtain possession of or exercise control over, such property") (emphasis added); (*Id.* ¶ 31(f)) ("to the extent not already provided in 11 U.S.C. § 1520, ***enjoining the commencement of any suit, action or proceeding in the territorial jurisdiction of the United States to resolve any dispute arising out of the BVI Proceedings, the Madoff Settlement*** or any orders issued by the BVI Court identified in the Petitions, or the BVI law relating thereto; provided that such relief shall not apply to the Clawback Proceeding[.]") (emphasis added)

### F.     DBSI Is Entitled To Commence Litigation to Prove Its Claim

24.     Creditors have the right to prove and liquidate their claims. Pursuant to the forum selection clause in the Agreement, DBSI has the right to prove and liquidate its claims in the district court. The district court is not only the forum provided for in the Agreement, but is where the Kingate Funds brought their previous claims under the Agreement against DBSI. If DBSI files and proves its claim, it would have no intention of disrupting distributions by seeking to execute

outside of the case. To the contrary, DBSI's intent would be to submit its claim, as liquidated, into the BVI Court administering distributions.[6]

## ARGUMENT

25.     The JLs' belated attempt to seek recognition of the decade-old BVI Proceedings and protection under Chapter 15 is based on their belief that "DB may initiate litigation against the Kingate Funds [pursuant to the Agreement] in the United States . . . ." (Pretlove Decl. ¶ 33)  The JLs not only agreed to venue in New York, post-petition, they initiated the 2011 Litigation in the United States District Court for the Southern District of New York when seeking to enforce the Agreement. There can be no harm in providing DBSI the right to pursue an adjudication of rights under the Agreement in that forum now. Simply put, the district court was the appropriate forum when the JLs sought to adjudicate the parties rights under the Agreement, and it is the appropriate forum when DBSI seeks to do the same thing.

26.     The JLs' attempt to use Chapter 15 as a sword to enjoin DBSI from proving its claim in the contractually agreed forum constitutes bad faith that is "cause" to modify the injunctive relief sought by the JLs. Moreover, DBSI is seeking to preserve the right to liquidate its claims in the district court and does not intend to take any actions in the U.S. to enforce or collect against the U.S. assets, eliminating any prejudice to creditors or interference with the BVI Proceedings. Additionally, the balance of harms weighs in favor of allowing DBSI the right to commence and prosecute its claim.

### A.     Bad Faith Is "Cause" To Deny Or Limit Relief Granted Upon Recognition

27.     Chapter 15 is intended to promote the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities." 11

---

[6]     As long as DBSI's rights are sufficiently protected in the BVI Proceedings, DBSI does not intend to return to this Court with respect to the Kingate Funds' U.S. assets.

11

U.S.C § 1501(3). Since "[b]ankruptcy courts are equity courts with powerful tools at their disposal to interfere with or disrupt traditional laws," it is critical that their powers are not abused for purposes "other than to accomplish the legitimate aims and objectives of the statute," lest they "cause injustice and thwart useful social policy." *In re HBA E., Inc.*, 87 B.R. at 258-263. Courts have expressed concern that a debtor will use the recognition provisions of the bankruptcy code to evade its creditors, which use would be inconsistent with the objects and purposes of such relief. *See e.g., Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re SPhinX, Ltd.)*, 371 B.R. 10, 19 (S.D.N.Y. 2007) (denying foreign main recognition *inter alia* "on the ground that the recognition is being sought for an improper purpose" as "improper forum shopping and frustration of an existing judgment was not only a 'primary' purpose of the Chapter 15 filing, but 'the only' apparent reason for the [Chapter 15 proceedings],'" but granting non-main relief); *Underwood v. Hilliard (In re Rimsat, Ltd.)*, 98 F.3d 956, 962 (7th Cir. 1996) (declining to defer to a foreign proceeding as "instituted in an effort to defeat" a U.S. bankruptcy proceeding and "strategic conduct that is not be encouraged").

28. Thus, good faith is the "gatekeeper" of the bankruptcy court. *In re HBA E., Inc.*, 87 B.R. 248, 263 (Bankr. E.D.N.Y. 1988) (dismissing case filed to exploit automatic stay as litigation tactic); *In re Creative Fin. Ltd. (In Liquidation)*, 543 B.R. 498, 523 (Bankr. S.D.N.Y. 2016) (dismissing case on section 1517 grounds but emphasizing that Chapter 15 courts may remedy bad faith through various mechanisms). Indeed, Section 305 may be as a basis to deny or vacate recognition on the basis of bad faith.[7] *See In re Millard*, 501 B.R. 644, 653-54 (Bankr. S.D.N.Y. 2013) (bad faith may be considered under section 305 as a basis to vacate recognition).

---

[7] *See In re Creative Fin*, 543 B.R. at 501, 523 (deferring the issue of "[w]hether or not section 305 is an available mechanism to address bad faith" but questioning whether stay relief is a "fully satisfactory substitute for keeping those with bad faith out of the U.S. courts completely"). And courts can apply their inherent powers under section 105(a) to

29.     The Court has tools to prevent abuse of the Chapter 15 process, including granting relief from the stay, which "has long been a classic remedy for bad faith filing." *In re Creative Fin.*, 543 B.R. at 523. *See In re AMC Realty Corp.*, 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001) ("Cause [to lift stay]… may be found based on unenumerated factors, including 'bad faith,' or failure to deal with creditors fairly even where 'bad faith' is not found.") (internal citations omitted); *Green Point Bank v. Treston*, 188 B.R. 9, 12 (S.D.N.Y. 1995) (affirming stay relief because "bad faith is cause for lifting the stay").

30.     Judge Gerber's decision in *Creative Finance* is instructive.  There, joint provisional liquidators appointed over debtors incorporated in the BVI sought to use the Chapter 15 process as a "device to thwart enforcement" of an English judgment over assets located in the United States.  *In re Creative Fin.*, 543 B.R. at 502.  Judge Gerber found that the debtors had "orchestrat[ed] this entire chapter 15 case to deprive their only noninsider creditor of much or all of the fruits of its judgments."  *Id.* at 513.  Although the Court denied recognition based on its analysis of the debtors' center of main interests under section 1517, the Court emphasized that Chapter 15 courts were empowered to lift the stay "in the face of bad faith filing, including of the type this Court has found here."  *Id.* at 522.

31.     The Kingate Funds misuse of the Chapter 15 process constitutes bad faith that warrants modifying the relief requested by the Kingate Funds to permit DBSI to pursue its claim in the district court.

---

dismiss a bankruptcy petition where the debtor has commenced its bankruptcy case for an improper purpose and in bad faith.  *See Casse v. Key Bank Nat'l Assoc'n (In re Casse)*, 198 F.3d 327, 336 (2d Cir. 1999).  *But see British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*, 488 B.R. 205, 239 n.40 (Bankr. S.D. Fla. 2013) (holding that Chapter 15 cases are not subject to abstention under section 305).

**B.    The Kingate Funds Seek, In Bad Faith, To Deprive DBSI Of Its Claims or Its Contractually Agreed Forum**

32.    The Kingate Funds cannot avoid claims by barring creditors from proving them.  If the Kingate Funds are trying to force litigation in the BVI, by a U.S. plaintiff, on a New York contract, governed by New York law and subject to exclusive venue in New York, then DBSI would be denied its contractual right to litigate its claim in the courts of the United States.  As the Supreme Court stated in *Scherk v. Alberto-Culver Co*., "[a] contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is . . . an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction."  417 U.S. 506, 516 (1974).

33.    Chapter 15 is not a vehicle to avoid claims or to defeat a forum selection clause in a post-petition contract.  *See In re Artisanal 2015, LLC*, No. 17-12319, 2017 Bankr. LEXIS 3813, at *39-40 (Bankr. S.D.N.Y. Nov. 3, 2017) (granting stay relief where debtor's filing was a bad faith "litigation tactic" where "[i]t is plain that in filing this case, the Debtor is 'forum shopping' since in the Bankruptcy Complaint it seeks to adjudicate substantially the same matters that are pending before the State Court'"); *In re Fraternal Composite Serv., Inc*., 315 B.R. 247, 253 (Bankr. N.D.N.Y. 2003) ("this Court can only conclude that it was the Debtor's intent to use the bankruptcy process solely as a means to delay, frustrate and re-litigate State Court issues. . . . [T]he Code was not intended to allow a debtor the option of litigating a dispute with a single party . . . in an alternate forum") (internal quotation marks omitted).

34.    Using Chapter 15 as a sword, rather than a shield, to evade litigation and deprive DBSI of contractually bargained for rights is quintessential bad faith.  *See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1312 (2d Cir. 1997) (affirming finding of debtor's bad faith and stating that "the bankruptcy court examined these disputed matters and

14

found them to be emblematic of a dispute limited to only two parties."); *In re Reyes*, No. 14-13233 (SMB), 2015 Bankr. LEXIS 2575, at *15-16 (Bankr. S.D.N.Y. Aug. 4, 2015) ("the debtor filed the bankruptcy case solely as a litigation tactic to try the dispute in a forum he deemed more favorable" was a bad faith "impermissible use" of the Bankruptcy Code; *see also In re Residential Capital*, No. 12-12020, 2012 Bankr. LEXIS 3624, at *2, 12–13 (Bankr. S.D.N.Y. Aug. 7, 2012) ("the Court will not permit the automatic stay to be used as both a sword and a shield"). Modifying the stay that would be imposed if the BVI Proceedings are recognized as foreign "main" proceedings to allow DBSI to pursue its claim in the district court is an appropriately tailored remedy to address the Kingate Funds' improper motives under sections 362(d), 1521, and 1522 of the Bankruptcy Code.

**C.    These Cases Were Filed Solely To Avoid A Claim Or Gain A Litigation Advantage In A Two-Party Dispute**

35.    The Kingate Funds seek Chapter 15 relief to avoid a claim or to gain an advantage in a two party dispute between DBSI and the Kingate Funds.  Congress did not intend for bankruptcy to be "used as a fist in a two party bout" to "protect unworthy debtors and correspondingly inflict harm on their creditors or adversaries."  *In re HBA E., Inc.*, 87 B.R. at 260, 263.

36.    DBSI is the only creditor of the Kingate Funds' estate identified on the debtors' service lists.  *See* Notice List [D.E. 15].  The only basis identified by the JLs for seeking recognition of the BVI Proceedings pursuant to Chapter 15 is their fear that DBSI "may initiate litigation against the Kingate Funds" in the same court that the Kingate Funds previously filed in to seek to enforce the Agreement.  (Verified Petition, §E ¶ 29; *see also* Pretlove Decl. ¶ 33)  And the Kingate Funds are asking to enjoin DBSI from "commencing any suit, action or proceeding in the territorial jurisdiction of the United States to resolve any dispute arising out of the BVI Proceedings, the

Madoff Settlement or any orders issued by the BVI Court identified in the Petitions, or the BVI law relating thereto…." Proposed Order, Verified Petition Ex. A at 4-5.

37. Courts routinely recognize that granting relief from the automatic stay is particularly appropriate to prevent a party from achieving a litigation advantage, including by securing a stay of two-party litigation. *Anchev v. 335 W. 38th St. Coop. Corp. (In re Anchev)*, No. 99 B 45846, 2009 Bankr. LEXIS 906, at *7 (Bankr. S.D.N.Y. Apr. 15, 2009) ("When the debtor is in the position of assailant, it would be inequitable to invoke the stay[.]") (internal quotations omitted); *accord Bohack Corp. v. Borden, Inc*., 599 F.2d 1160, 1168 (2d Cir. 1979). A nation-wide injunction would deprive DBSI of its right to prove and liquidate its claim in the contractually agreed venue for resolving disputes under the Agreement. The Kingate Funds have not identified any basis for enjoining litigation of the New York dispute, under a New York contract, governed by New York law, that includes a provision requiring litigation in New York. The Kingate Funds' attempt to "weaponize[]" the Chapter 15 process to "collaterally attack" DBSI's fundamental right to liquidate its claim is a misuse of the Chapter 15 bankruptcy process. *See In re Oi Brasil Holdings Cooperatief U.A*., 578 B.R. 169, 242 (Bankr. S.D.N.Y. 2017). Accordingly, if the Court recognizes the foreign main proceeding, the injunctive relief sought by the Kingate Funds should be modified.

**D.    Other Factors Present Here Constitute "Cause" To Limit the Chapter 15 Stay**

### 1.    The Standards

38. In addition to the bad faith ground, bankruptcy courts considering a request to pursue litigation in another forum will "weigh the request against the [Sonnax] factors in

determining if 'cause' exists."[8]  *In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (Bernstein, J.); *In re Serviços de Petróleo Constellation S.A.,* No. 18-13952 [D.E. 96] (S.D.N.Y May 17, 2019) (considering *Sonnax* factors and lifting the Chapter 15 stay to allow movant to commence district court proceeding).  Courts following *Sonnax* apply those factors most relevant to the case before them and need not assign them equal weight.  *Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship*, 183 B.R. 682, 688 (S.D.N.Y. 1994).

39.     An analysis of the most relevant *Sonnax* factors supports limiting any injunctive relief granted pursuant to section 1520 and 1521 of the Bankruptcy Code.  Specifically, the following factors constitute "cause" here:  (i) DBSI's right to pursue proceedings in the district court will not interfere with the Debtors' foreign proceeding, but instead will facilitate administration of the foreign estate; (ii) stay relief will not prejudice creditors; (iii) having the dispute adjudicated by the district court serves the interest of judicial economy; and (iv) the balance of harms tip decisively in DBSI's favor.[9]

---

[8]     These factors include "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms."  *In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (emphasis added).

[9] `    In addition, the following are other factors that weigh in favor of modifying the stay.  *First*, lifting the stay will result in a complete resolution of the issues; the Kingate Funds will either have to complete the sale or not.  *Second*, granting DBSI limited relief from the stay will not open up the floodgates of litigation as there are no other creditors asserting a direct interest in the Kingate Claims.  *Third*, any judgment resolving the district court proceeding would be declaratory in nature and neither subject to equitable subordination, nor give rise to a judicial lien on the debtors' property.  *See In re Artisanal 2015, LLC*, 2017 Bankr. LEXIS 3813, at *48 (finding that the "eighth and ninth *Sonnax* Factors weigh in favor of granting the Landlord relief from the stay" where movant sought a declaratory judgment in state court).

**2.** **Permitting DBSI To Liquidate Its Claims Will Not Interfere With, But Rather Will Facilitate, The Administration Of The BVI Estate**

40.      Stay relief is the classic remedy where a creditor must liquidate its claim in order for the debtor's assets to be fully administered.[10]  *In re N.Y. Med. Grp., P.C.*, 265 B.R. at 414 (lifting stay to permit liquidation of claim as "the mere pendency of [an] unliquidated claim forces the debtor to…[delay] distribution"); *Stranz v. Ice Cream Liquidation (In re Ice Cream Liquidation, Inc.*), 281 B.R. 154, 166 (Bankr. D. Conn. 2002) (lifting stay because "[i]f the claim cannot be liquidated…the [d]ebtor may have to hold back some distributions).

41.      Here, DBSI seeks only the ability to adjudicate its rights and liquidate its claim so that the assets of the Kingate Funds may distributed, and the Kingate Funds' years-long bankruptcy can be brought to an end.  As long as DBSI's rights are sufficiently protected in the BVI Proceedings, DBSI does not intend to come back to this Court with respect to the Kingate Funds' U.S. assets.  Assuming it prevails, DBSI would seek to either close on the Agreement or have any applicable distribution administered in the ordinary course of the BVI Proceedings.  Therefore, this two-party contract dispute will not interfere with the administration of the Chapter 15 cases or BVI Proceedings, but rather will facilitate administration with less delay.

42.      The claim liquidation process should take place in district court because that is the parties' agreed venue and the venue where the Kingate Funds sought to enforce the Agreement. Indeed, New York is the only appropriate venue for liquidating the claim.  The plaintiff is in New York, the dispute involves a New York agreement, which is governed by New York law, and

---

[10]      *Pierce v. Breitburn Energy (In re Breitburn Energy Partners L.P.)*, No. 16-01198, 2018 Bankr. LEXIS 1336, at *7 (Bankr. S.D.N.Y. May 7, 2018) (Bernstein, J.) (granting stay relief order "**typical** of the type entered in a bankruptcy case" where order "allows the party suing the debtor to liquidate its claims or declare its rights, but also requires the party, now a judgment creditor, to return to the bankruptcy court to enforce the judgment."); *In re G.S. Distribution*, 331 B.R. 552, 558 (Bankr. S.D.N.Y. 2005)  (granting stay relief to permit liquidation of claims); *Barber v. Arnott (In re Arnott)*, 512 B.R. 744, 746 (Bankr. S.D.N.Y. 2014) (same); *In re N.Y. Med. Grp.*, P.C., 265 B.R. at 414  (same); *In re Cole*, 202 B.R. 356, 362 (Bankr. S.D.N.Y. 1996) (Bernstein, J.) (same).

includes an exclusive New York venue provision. Thus, the BVI Court agreed that the district court was the appropriate forum for this New York-centric dispute, in approving the JLs decision to commence the 2011 Litigation in the district court. (Verified Petition ¶ 24). Consequently, DBSI's proposed actions will advance the BVI Proceedings by leaving all issues of administrating the Kingate Funds' assets to those forums, while allowing the non-core, contract dispute to be resolved by the court that previously considered disputes under such contract. *Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship*, 183 B.R. at 688 (upholding stay relief and finding that "litigation of the issues in another forum would not interfere with the bankruptcy proceeding").

43.     In sum, the liquidation of DBSI's claim is essential to allow the plenary BVI Proceedings to be fully administered.

### 3.    Permitting DBSI To Liquidate Its Claim Will Not Prejudice Creditors

44.     Allowing DBSI to liquidate its claim would not prejudice other creditors because merely seeks an adjudication of rights that currently exists. *See In re N.Y. Med. Grp., P.C.*, 265 B.R. at 414 (lifting stay to allow creditor to liquidate claim in state court because such relief, while having the ultimate effect of diluting recoveries to creditors, does not constitute legal prejudice); *In re Breitburn Energy, L.P.*, 571 B.R. 59 (Bankr. S.D.N.Y. 2017) (Bernstein, J.) (granting stay relief to permit Texas courts to adjudicate contract claim where Texas court was not required to administer receipt of property or payment); *In re Qimonda AG*, 482 B.R. 879, 898-99 (Bankr. E.D. Va. 2012) (granting relief from Chapter 15 stay to permit adjudication of post-petition breaches of contract where movant did not seek to enforce any resulting judgment over U.S. assets); *In re Phila. Athletic Club, Inc.*, 9 B.R. 280, 282 (Bankr. E.D. Pa. 1981) (lifting stay to allow plaintiff to liquidate claim in state court); *c.f. In re Energy Coal S.P.A.*, 582 B.R. 619, 628 (Bankr. D. Del.

2018) (foreign representative agreed to lift stay to allow party to **liquidate** claim in agreed upon

forum, but enjoined party from collecting on claim outside of foreign main proceeding).

45.     Moreover, the venue in which DBSI's claim is liquidated is of no consequence to

other creditors.  *Stranz v. Ice Cream Liquidation (In re Ice Cream Liquidation, Inc.)*, 281 B.R. at

166 (finding no prejudice to creditors as "other creditors and the estate do not have a sufficient

legitimate interest in prosecuting/defending pre-trial proceedings in this court as opposed to the

New York District Court").  Therefore, there is no prejudice to other creditors that would result

from allowing DBSI to adjudicate its claim in the district court.

**4.     The Interests Of Judicial Economy And Expediency Weigh In Favor Of Having The District Court Adjudicate This Non-core, Contract Dispute**

46.     The district court is the most judicially economic forum to adjudicate this non-core,

contract dispute as it is able to render a final, binding decision on the same issues that were

previously presented to it concerning the Agreement.  *Nw. Airlines, Inc. v. L.A. (In re Nw. Airlines*

*Corp.)*, 384 B.R. 51, 54, 59 (S.D.N.Y. 2008) (holding that state law contract dispute was non-core

because "the principal thrust" of the litigation was to determine the parties rights under such

contract, specifically the right to terminate); *see also Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship*,

183 B.R. at 688 (finding that bankruptcy court had addressed "how best to serve the interests of

judicial economy and the expeditious and economical resolution of the litigation" in granting stay

relief over non-core contract dispute and making arrangements for complete resolution of the

issues through transfer to civil court); *see also In re Project Orange Assocs., LLC*, 432 B.R. 89,

109 (Bankr. S.D.N.Y. 2010) (granting stay relief where state court was the "most efficient and

appropriate place for . . . the decision to be made" considering the judge's prior involvement and familiarity with the contracts at issue).[11]

47.     Therefore, the district court is not only the forum agreed to by the parties, but is also the forum that best promotes the interests of judicial economy.

### **5.**     **The Balance Of Harms Weighs Decisively In DBSI's Favor**

48.     The balance of hardship also weighs in favor of DBSI. *In re Ionosphere Clubs, Inc.*, 133 B.R. 5, 7 (S.D.N.Y. 1991) ("In determining whether sufficient cause to modify or lift an automatic stay exists, courts balance the hardship to be imposed on the debtor's estate . . . against the hardship to be imposed on the moving party if the stay is not lifted."); *Milne v. Johnson (In re Milne)*, 185 B.R. 280, 283 (N.D. Ill. 1995) ("Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay.").

49.     As set forth above, if DBSI is not permitted to commence an action in the district court, the Kingate Funds will have succeeded in depriving DBSI of its right to prove and liquidate its claims in its contractually bargained-for venue.

---

[11]     To the extent the Debtors seek to have the Bankruptcy Court hear DBSI's claims under the Agreement, doing so would not serve the interests of judicial economy for several reasons. *First*, the special expertise of the Bankruptcy Court would not be required here where the dispute is a garden variety contract dispute. *In re Phila. Athletic Club, Inc.*, 9 B.R. 280, 282 (Bankr. E.D. Pa. 1981) (finding that lifting the stay would be "in the best interests of all parties concerned" as claim had to be liquidated in order for the debtor's case to conclude and where "there is no issue involved in the state suit which requires the legal competence of the bankruptcy court"); *Metz v. Poughkeepsie Sav. Bank, FSB (In re Metz)*, 165 B.R. 769, 772 (Bankr. E.D.N.Y. 1994) (granting stay relief where movant's dispute "concerns state foreclosure law; thus, the expertise of the bankruptcy court is unnecessary"). *Second*, DBSI has a right to a jury trial, a right that cannot be honored by the Bankruptcy Court. *Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, No. 09 CV 8685 (HB), 2011 U.S. Dist. LEXIS 28798, at *7-8 (S.D.N.Y. Mar. 21, 2011) (finding right to jury trial in declaratory judgment action where "underlying dispute" concerned action to enforce contract). *Third*, because the claim is non-core, the Bankruptcy Court would, at most, be able to issue a report and recommendation that would be subject to *de novo* review by the district court. 28 U.S.C. 157(c).

50.     On the other hand, requiring the Kingate Funds to honor their contractual commitment and litigate in the U.S. would impose no burden on the Debtors.  Indeed, the Kingate Funds have retained New York based lawyers to handle disputes arising under the Agreement and have previously commenced litigation in the district court.  Having brought the 2011 Litigation in the district court pursuant to the forum selection clause, and having received approval from the BVI Court to commence such litigation, the Kingate Funds cannot now claim that proceeding in the *same forum*, pertaining to the *same agreement*, between the *same parties* would cause them harm.  The Kingate Funds have not and cannot identify any ground for evading their Agreement on venue or requiring a U.S. dispute to be litigated outside the United States.

51.     The fact that the balance of hardships tips decisively in favor of DBSI also supports modifying recognition relief pursuant to section 1522.  *Jaffé v. Samsung Elecs. Co.*, 737 F.3d 14, 27-28 (4th Cir. 2013) ("The [sufficiently protected] analysis required by § 1522(a) is therefore logically best done by balancing the respective interests based on the relative harms and benefits in light of the circumstances presented, thus inherently calling for application of a balancing test."); *In re Sanjel (USA) Inc.*, No. 16-50778, 2016 Bankr. LEXIS 2771 (Bankr. W.D. Tex. July 28, 2016) (lifting the stay pursuant to section 1522 in light of balance of harms weighing in favor of movants, who would suffer a significant litigation disadvantage); *c.f. In re Oi S.A.*, No. 16-11791, 2018 Bankr LEXIS 2053, at *44 (Bankr. S.D.N.Y. July 9, 2018) (balancing test weighs against movants where "[d]enying the relief requested by the [f]oreign [r]epresentative would work to the detriment of these vast creditor constituencies, instead serving only the parochial interests of the [Movants]").

52.     Granting the limited relief from stay that DBSI seeks would strike the appropriate balance between granting comity to the BVI Proceedings, and preserving DBSI's contractual

rights.  *See In re Energy Coal S.P.A.*, 582 B.R. at 629 ("[T]he Foreign Representative's agreement to permit liquidation of the claim in the [contractually selected forum,] strikes an appropriate balance in this case.").

### E.  There Are Extraordinary Circumstances To Lift Stay

53.  There are decisions in this district that an unsecured creditor needs to establish "extraordinary circumstances" to lift the stay.  *See, e.g., In re Breitburn Energy LP,* 571 B.R. at 65;  *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992).  The policy behind those decisions is to prevent an unsecured creditor from obtaining a distributive advantage over other unsecured creditors, something that is not at issue here.  *In re Leibowitz*, 147 B.R. at 345.  The relief that DBSI seeks to liquidate its claim in the district court is limited, and DBSI is the only party with an interest in Kingate Claims pursuant to its post-petition contract.

## CONCLUSION

For the foregoing reasons, DBSI objects to recognition of the BVI Proceedings unless the relief sought by the Kingate Funds is modified to prevent recognition from interfering with DBSI's ability to commence and prosecute its claim in the district court.

Dated:       September 30, 2019
             New York, New York

                              Respectfully submitted,

                              WHITE & CASE LLP

                              By:  */s/ Glenn M. Kurtz*

                              WHITE & CASE LLP
                              1221 Avenue of the Americas
                              New York, New York 10020-1095
                              (212) 819-8200
                              Glenn M. Kurtz
                              Brian D. Pfeiffer
                              Andrew W. Hammond
                              Thomas E. MacWright

                              *Attorneys for Deutsche Bank Securities Inc.*